**James L. MAGUIRE and Linda Maguire, Plaintiffs-Movants,**

v.

**PABST BREWING COMPANY, Defendant.**

No. 85–858.

Supreme Court of Iowa.

May 21, 1986.

M. Gene Blackburn of Law Offices of M. Gene Blackburn, P.C., Fort Dodge, for plaintiffs-movants.

David A. Opheim of Kersten, Opheim & Carlson, Fort Dodge, for defendant.

CARTER, Justice.

The United States District Court for the Southern District of Iowa has certified six questions of law to be answered by this court as provided in Iowa Code sections 684A.1, .3 (1985) and Iowa Rules of Appellate Procedure 451–61. These questions involve the application of Iowa law to six variform theories of liability proposed by the plaintiffs in a diversity action pending in that court.

The complaint charges that plaintiff James L. Maguire was seriously injured when a motor vehicle in which he was riding was struck by another motor vehicle driven by Vikki Paulson. James Maguire seeks to recover damages for those injuries. His wife, plaintiff Linda Maguire, seeks to recover for loss of society, companionship and support. It is alleged in the complaint that Paulson was intoxicated at the time of the collision as a result of having consumed an excessive amount of beer brewed and distributed by the defendant Pabst Brewing Company (Pabst).

The complaint, as amended, seeks to hold Pabst liable on the following theories, each of which will be discussed more fully at a later point in our opinion: (1) liability for abnormally dangerous activities as discussed in *Lubin v. City of Iowa City*, 257 Iowa 383, 131 N.W.2d 765 (1964) and Restatement (Second) of Torts §§ 519, 520 (1965); (2) liability for supplying through a third person a product which was unlikely to be made safe before being put to the use intended or expected as discussed in Restatement (Second) of Torts § 389; (3) liability for supplying a product to further defendant's business purpose when it knew or had reason to know that the product was likely to be dangerous for the use for which it was supplied as discussed in Restatement (Second) of Torts § 391; (4) liability for failing to exercise reasonable care to make its product safe for the use for which it was supplied or to inform users of its dangerous condition as discussed in Restatement (Second) of Torts § 392; (5) liability of a manufacturer for the acts of a third person supplying a product dangerous for use as discussed in Restatement (Second) of Torts § 394; and (6) liability for supplying a defective product, unreasonably dangerous to the user, as discussed in Restatement (Second) of Torts § 402A.

Pabst filed a motion for summary judgment asserting that, based on the allegations of the complaint and the undisputed facts which have been developed through discovery, plaintiffs may not recover under Iowa law on any of the theories which they have advanced. This motion for summary judgment has been submitted to the federal

court but decision thereon has been held in abeyance pending our disposition of the certified questions of law.

Accompanying the six certified questions of law is a statement of certified facts. Many of these facts go beyond the bare allegations of the complaint. All but one of the six certified questions are framed in terms of whether the allegations of the complaint state a claim or cognizable cause of action under Iowa law.

In an explanatory footnote to its certification order, the federal court expressly recognizes that the issues certified involve the sufficiency of the allegations of the complaint and suggests that the additional facts gleaned from discovery depositions are included to aid us in applying the federal standard for determining such sufficiency.[1] This standard is stated to be whether plaintiffs can prove any set of facts in support of their claim that would entitle them to relief. We find the additional certified facts to be illuminating and helpful with respect to our determination of the legal questions which have been presented and consistent with section 684A.3 which provides that the purpose of certified facts is to show "the nature of the controversy in which the questions arose." We therefore set forth the material portion of the certified facts before stating and answering the questions of law which have been presented.

The afternoon before the accident in which James L. Maguire was injured Vikki Paulson drank approximately four glasses of beer in a tavern located in Fort Dodge. She consumed this beer in approximately one and one-half hours. The beer was not a Pabst product. After leaving this tavern, Vikki Paulson went home and ate her evening meal. She then went to another Fort Dodge tavern arriving at approximately 7 p.m. There she participated in a pool tournament sponsored by that establishment. Between approximately 7 p.m. and 1 a.m. the following morning, she drank an undis-

closed number of glasses of Pabst draft beer.

The accident in which James L. Maguire was injured occurred shortly following the time that Vikki Paulson left the tavern where the pool tournament was held. She was intoxicated at this time and continued to be intoxicated at the time of the accident. Prior to the date on which Maguire was injured, Vikki Paulson had drunk beer on a social basis for approximately twelve years. She regularly drank beer at least once a week during that period of time. She considered herself a social drinker, although she had been intoxicated on more than one occasion prior to the date of the accident. She was aware that if she consumed too much beer her reactions and vision would be adversely affected, and her capabilities for driving a motor vehicle would be lessened.

Following the accident in which James Maguire was injured, Vikki Paulson was charged with and pled guilty to (1) failure to stop at a stop sign; (2) operating a motor vehicle while under the influence of alcohol; and (3) involuntary manslaughter in the death of another person riding in the same vehicle as Maguire. She pleaded guilty to each of these charges.

During a period of time relevant to the present action, Pabst has caused a series of commercials to be shown on television in the Fort Dodge viewing area which promote the sale of the beer products brewed and distributed by it. These advertisements depict young people, both male and female, most of whom appear to be in their twenties. The bartenders are represented in these commercials by older actors. The characters in the commercials appear to be predominantly blue collar but some white collar types appear as welcome guests in a friendly, festive "slice-of-life" drama.

These characters wear working clothes for the most part and talk like "regular guys." They are gregarious, fun-loving people who express an appreciation for

---

[1]. The first of the six certified questions is not framed in terms of the sufficiency of the complaint to state a claim, however, as a result of concessions made in oral argument which are not inconsistent with the court's explanatory footnote, we view it as if it were.

good friends and "real beer." The setting is always a tavern which is crowded in a way that suggests popularity. The patrons are always in highly festive mood, and the bartender gives a strong recommendation to Pabst beer. The contents of oversized pitchers of frosty amber liquid representing Pabst draft beer is freely dispensed among the glasses of the assembled patrons. At the conclusion of some of the commercials, one character says to another: "Let's have another." In 1982, Pabst spent $25,023,000 in advertising its beer, and in 1983 spent $28,783,000.

We separately consider each of the six certified questions of law which the federal court has propounded. Because of the interrelationship which exists between certain questions, we depart somewhat from the sequence in which these questions are presented in the order of certification.

I. *Liability for Abnormally Dangerous Activities (Certified Question No. 1).*

■ The first certified question is as follows:

> 1. Does the Iowa Supreme Court recognize a claim or cause of action based upon the concepts of liability without fault against a purveyor of alcoholic beverages and in favor of an innocent traveler upon the highway who is injured when struck by a person under the influence of intoxicating alcohol manufactured and sold by the purveyor, taking into account the manner in which the product is marketed?

The form in which this question is presented is so broad that it would be extremely difficult to answer it in the abstract. The parties have simplified our task, however, by concessions made in written and oral arguments. They agree that we should treat this question as if it asked whether plaintiffs' complaint states a claim or cognizable cause of action under Iowa law based on the legal principles recognized in Restatement (Second) of Torts §§ 519, 520 (1977).

Section 519 of the Restatement provides:

> (1) One who carries on an abnormally dangerous activity is subject to liability for harm to the person, land or chattels of another resulting from the activity, although he has exercised the utmost care to prevent the harm.
>
> (2) This strict liability is limited to the kind of harm, the possibility of which makes the activity abnormally dangerous.

Section 520 of the Restatement lists six factors to be considered in determining whether an activity is abnormally dangerous for purposes of applying section 519. These include the existence of a high degree of risk of harm to others, likelihood that the harm which will result will be great, inability to eliminate the risk by exercise of reasonable care, the extent to which the activity is a matter of common usage, the inappropriateness of the activity to the place where it is carried on, and the extent to which the value to the community from the activity is outweighed by its dangerous attributes.

Plaintiffs urge that we have recognized similar principles as the law of this state in *Lubin,* 257 Iowa at 390–91, 131 N.W.2d at 770 (damages resulting from the inevitable rupture of underground water pipes which were not maintained) and *National Steel Service Center v. Gibbons,* 319 N.W.2d 269, 273 (Iowa 1982)(injury resulting from transporting explosive cargo).

Pabst, relying on *Perkins v. F.I.E. Corp.,* 762 F.2d 1250, 1265 (5th Cir.1985), a federal decision involving the sale of handguns to members of the public, asserts that a section 519 rationale is inappropriate with respect to acts of consumer marketing. In the *Perkins* decision, the federal court stated:

> Even if §§ 519–20 of the Restatement (Second) of Torts were applicable, it appears that the defendants could not be held liable under those sections. The text of those sections is reproduced in note 9. The comments to § 519 demonstrate that the marketing of a consumer product is not within the purview of the kinds of activities that section was meant

to encompass. In particular, comment d states that "liability arises out of the abnormal danger of the activity *itself,* and the risk that it creates, of harm to those *in the vicinity*". Restatement (Second) of Torts § 519 comment d (1977)(emphasis added). Thus, § 519 encompasses activities that are dangerous in and of themselves and that can *directly* cause harm to those "in the vicinity", even though conducted with "the utmost care to prevent the harm". *Id.* The storage of dynamite in a city is one paradigm given in comment e. The marketing of a handgun is not dangerous in and of itself, and when injury occurs, it is not the direct result of the sale itself, but rather the result of actions taken by a third party.

*Id.* at 1265 n. 43 (emphasis in original).

The plaintiffs respond to Pabst's arguments by asserting that the distribution of its beer carries a high degree of risk by reason of its "untrammeled marketing practices." They describe these practices as an "invitation to excess," through exaltation of hedonistic tendencies over good judgment. Plaintiffs suggest that, because these commercials seek to promote consumption of alcohol at taverns by consumers who have traveled there by automobile, they constitute a danger to highway safety.

While there is a ring of truth to plaintiffs' characterization of Pabst's advertising practices, we cannot accept their contention that the complaint describes an abnormally dangerous activity so as to create the type of liability without fault espoused in section 519 of the Restatement. The thrust of plaintiffs' argument, rather than fostering the applicability of that section of the Restatement, tends to negate its applicability. Section 519 is aimed at risks which are not eliminated by the exercise of all reasonable precautions. Such dangers must be abnormal without regard to the means through which the distribution of the product is accomplished. We conclude that the allegations of the complaint do not state a claim or cognizable cause of action under Iowa law for the type of liability

recognized in sections 519 and 520 of the Restatement or our decisions in *Lubin* or *National Steel Service Center.* We therefore answer the first certified question of law in the negative.

■ II. *Liability for Sale of an Unreasonably Dangerous Product in a Defective Condition as Recognized in Restatement (Second) of Torts § 402A (1965)(Certified Question No. 6).*

Certified question No. 6 is as follows:

6. Does Plaintiffs' Complaint allege a claim or cause of action cognizable under Iowa law pursuant to the precepts of § 402A of the Restatement (Second) of Torts by alleging that the product distributed and placed in the stream of commerce by the Defendant Pabst Brewing Company carried no warning as to its dangerous effects by reason of overconsumption thereof; and that the lack of warning as to its excessive use made the product unreasonably dangerous thereby making the product sold by the Defendant defective?

Plaintiffs argue that, under our decision in *Cooley v. Quick Supply Co.,* 221 N.W.2d 763, 769 (Iowa 1974) and the decision of the court of appeals in *LaCoste v. Ford Motor Co.,* 322 N.W.2d 898, 901 (Iowa Ct.App. 1982), liability under section 402A to the Restatement may exist if it is shown that it is unreasonably dangerous to place Pabst's products in the hands of the user without suitable warning.

The comments accompanying section 402A speak directly to the issue of proper directions or warning. Comment *j* states that, "[i]n order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use." The same comment speaks directly to the issue of alcoholic beverages as follows:

But a seller is not required to warn with respect to products, or ingredients in them, which are only dangerous, or potentially so, when consumed in excessive quantity, or over a long period of time, when the danger, or potentiality of danger, is generally known and recog-

nized. Again the dangers of alcoholic beverages are an example, as are also those of foods containing such substances as saturated fats, which may over a period of time have a deleterious effect upon the human heart.

*Id.* Comment *i* accompanying section 402A states: "[g]ood whiskey is not unreasonably dangerous merely because it will make some people drunk, and is especially dangerous to alcoholics."

The precise issue with which we are confronted was considered in *Pemberton v. American Distilled Spirits Co.*, 664 S.W.2d 690, 692–93 (Tenn.1984). In that case, the plaintiff proceeded on a theory that grain alcohol distilled by the defendant was defective and unreasonably dangerous for purposes of applying section 402A because of the failure of the distiller to warn consumers of dangers inherent in its consumption. In rejecting this contention, the Tennessee court observed:

> The comments to § 402(a) of *Restatement (Second) of Torts* support this interpretation of 'unreasonably dangerous.' Comment j recognizes that the law does not impose a duty to warn of widely known risks, *i.e.*, '[a] seller is not required to warn with respect to products or ingredients in them, which are only dangerous, or potentially so, when consumed in excessive quantity, or over a long period of time, when the danger or potentiality of danger is generally known and recognized. Again the danger of alcoholic beverages are an example.'

*Id.* at 692. A similar determination of an analogous claim is found in the decision of *Garrison v. Heublein, Inc.*, 673 F.2d 189, 191–92 (7th Cir.1982)).

Plaintiffs urge that, without an adequate warning by the supplier as to the effects of varying quantities of beer on the consumer, the latter cannot be expected to know how much consumption is too much. This contention brings to mind the suggestion wisely advanced by Eleanor Roosevelt in 1932 that "the average girl faces the problem of learning, very young, how much she can drink of such things as whiskey and gin,

and sticking to the proper quantity." M. Sandmaier, *The Invisible Alcoholics: Women and Alcoholism*, at 44 (1980). This continues to be good advice today for both men and women. We are not persuaded, however, that it is practical to expect a wholesale purveyor of alcoholic beverages to devise an adequate warning of the particular tolerance of each consumer.

We have observed in an analogous context that, "[a]lthough persons engaging in consumption of alcoholic beverages may not be able to ascertain precisely when the concentration of alcohol in their blood, breath, or urine reaches the proscribed level, they should, in the exercise of reasonable intelligence, understand what type of conduct places them in jeopardy of violating the [law]." *State v. Bock*, 357 N.W.2d 29, 34 (Iowa 1984). We conclude the risks of intoxication presented to consumers of draft beer is sufficiently known to consumers at large that the allegations of plaintiffs' complaint fail to state a claim or cognizable cause of action under Iowa law for the type of liability recognized by section 402A of the Restatement (Second) of Torts, and we answer certified question No. 6 in the negative.

III. *Liability for Supplying a Product in Furtherance of Supplier's Business Purposes Without Exercising Reasonable Care to Make the Product Safe for the Use for Which it is Supplied (Certified Questions No. 3 and No. 4).*

Certified question No. 3 is as follows:

3. Does Plaintiffs' Complaint allege a claim or cause of action cognizable under Iowa law pursuant to the precepts of § 391 of the Restatement (Second) of Torts by alleging that said product was supplied to further the Defendant's business purpose and the Defendant knew, or had reason to know, that it was likely to be dangerous for the use for which it was supplied?

Certified question No. 4 is as follows:

4. Does Plaintiffs' Complaint allege a claim or cause of action under § 392 of the Restatement (Second) of Torts by

alleging that the Defendant supplied to Vikki Lynn Paulson through its distributor, but failed to exercise reasonable care to make the product safe for use for which it was supplied, or alternatively, failed to exercise reasonable care to discover its dangerous condition and to inform the said consumer of its dangerous character?

Because of the similarity of these two questions, we consider them together. These questions involve plaintiffs' attempt to establish a cause of action under sections 391 and 392 of the Restatement (Second) of Torts (1965). Both relate to liability for supplying chattels for the supplier's business purposes. Comment *c* accompanying section 392 of the Restatement states:

> In order that the rule stated in this Section shall apply, it is not necessary that the chattel be owned by the one who supplies it. It may be leased to him or borrowed by him. It is enough that he has had possession or control of it for the purpose of using it in connection with his business, and that he has supplied it for such purpose.

Comment *d* accompanying section 392 provides:

> [W]hen everything necessary to the performance of the supplier's contract or the completion of his business dealings is done, the fact that he permits his chattel to be used by those to whom he has supplied it previously for his business use, does not make such further use of the chattel a use for the supplier's business purposes.

Our reading of the foregoing comments convinces us that, in the present case, liability may not be predicated under the rules of law embraced in either section 391 or 392. The term "business purpose" of the supplier as contemplated by each of these sections does not continue after possession or control of the chattel has been transferred to someone else. *See Larner v. Torgerson Corp.*, 93 Wash.2d 801, 807,

613 P.2d 780, 783 (1980). For this reason, these sections of the Restatement have no applicability when a chattel has been sold by the manufacturer to a distributor for resale. Accordingly, we answer certified question No. 3 and certified question No. 4 in the negative.

■ IV. *Liability for Supplying a Product Through a Third Person Which is Unlikely to be Made Safe Before Being Put to the Use Intended or Expected as Recognized in Restatement (Second) of Torts § 389 (Certified question No. 2).*

Certified question No. 2 is as follows:

2. Does Plaintiffs' Complaint state a claim or cognizable cause of action under Iowa law pursuant to the precepts of § 389 of the Restatement (Second) of Torts by alleging that the Defendant purveyed and sold its product through a third person knowing that said product was unlikely to be made safe before being put to the use which Defendant should expect it to be put?

Plaintiffs urge that liability under section 389 of the Restatement is based upon a failure to provide adequate warning. Pabst responds by asserting that the knowledge of the public generally and Vikki Paulson in particular concerning the intoxicating propensities of beer preclude any imposition of liability under this theory. We believe that the arguments of both parties fail to identify the proper application to be accorded to section 389. This section of the Restatement does not establish principles of liability for failure to warn of a product's dangerous propensities.[2] It is instead a statement of principles ascribing liability on the part of the supplier of chattels even though warning of their dangerous propensities has been given to the users.

The correct application of section 389 is discussed in *Hill v. Clark Equipment Co.*, 42 Mich.App. 405, 414–16, 202 N.W.2d 530, 535–36 (1972). There the court, quoting

---

**2.** The comments to this section of the Restatement suggest that a failure to warn comes into

play under section 389 only as it bears upon the contributory fault of the plaintiff.

from 2 Harper & James, *Law of Torts* § 28.5, at 1542–44 (1956), states:

> The problem is really a phase of the one discussed above concerning the adequacy of full disclosure of a danger by the supplier. Here again, under negligence principles the question would still remain whether unreasonable hazard is to be anticipated from the use of the article even though its dangerous condition is manifest. In an earlier day ... when it appeared that the purchaser knew of the danger 'the bottom drop[ped] out of the case against the maker....' Today, however, the negligence principle has been widely accepted in products liability cases; and the bottom does not logically drop out of a negligence case against the maker when it is shown that the purchaser knew of the dangerous condition.

(Footnotes omitted.) The present situation does not present a proper case for the application of section 389. It would be contradictory, we believe, to determine, as we have, that, under the allegations of the complaint, a specific warning of the propensity of Pabst's product to cause harm is not required and then proceed to fit the case within that abnormally dangerous situation which, under section 389, imposes liability even though the user has been warned. We find no basis for imposing liability in the present case based upon the principles espoused in section 389 and, therefore, answer certified question No. 2 in the negative.

V. *Recovery Against Manufacturer for Liability Which May be Imposed Upon a Supplier (Certified Question No. 5).*

The final certified question which we consider is question No. 5 which asks as follows:

> 5. Does Plaintiffs' Complaint allege a claim or cause of action cognizable under Iowa law pursuant to § 394 of the Restatement (Second) of Torts against the Defendant alleging that the Defendant knew, or had reason to know, that its product was, or was likely to be, dangerous to persons likely to be endangered by its probable use?

We interpret this question as asking whether the principles espoused in section 394 of the Restatement (Second) of Torts provide an independent basis for imposing liability on Pabst under the allegations of plaintiffs' complaint. We hold that they do not. Section 394 only provides that, in certain instances, the manufacturer of a chattel is subject to the same liability as a supplier. An independent basis for holding a supplier liable must be shown in order for a manufacturer to be liable under the principles recognized in this section. Because we have rejected the other theories of supplier liability which plaintiffs have advocated, section 394 provides no independent basis for holding Pabst liable as the manufacturer. We therefore answer certified question No. 5 in the negative.

In conclusion, we have determined that each of the six certified questions of law must be answered in the negative. The clerk is directed to proceed in accordance with Iowa Rule of Appellate Procedure 458.

CERTIFIED QUESTIONS ANSWERED.

All Justices concur except LAVORATO, J., who takes no part.