Gail and Carroll **HEINZ**, Appellants,

v.

Roland **HEINZ**, Appellee.

No. 01–1325.

Supreme Court of Iowa.

Nov. 14, 2002.

Stephen R. Eckley and James G. Sawtelle of Duncan, Green, Brown, Langeness & Eckley, P.C., Des Moines, for appellants.

Janice M. Thomas and Douglas A. Haag of Patterson, Lorentzen, Duffield, Timmons, Irish, Becker & Ordway, L.L.P., Des Moines, for appellee.

STREIT, Justice.

Carroll Heinz seriously injured his arm while helping out on his brother Roland's farm when his arm became entangled in a speed jack. Carroll sued Roland for negligence in supplying unsafe equipment under Restatement (Second) of Torts section 392 (1965). Carroll argues the trial court erred in refusing to give an instruction based on his allegation that Roland failed to make his equipment safe for use under section 392(a). Carroll also asserts the court erred in allowing a defense expert to testify a farmer should rely on the safety of farm implements purchased for use on a farm. Carroll contends the court erred in directing a verdict on his claim that Roland owed him a duty as an employer.

Finally, Carroll argues the court erred in directing a verdict on his premises liability claim. We affirm in part, reverse in part, and remand for a new trial.

## I. Background and Facts

Carroll Heinz worked on his brother Roland's farm. Though Carroll had not farmed since childhood, he returned to Roland's farm in 1997 and 1998 to help Roland during the harvest. In 1998, while the brothers were unloading a silo, Carroll was seriously injured. At the rear of the tractor Roland hooked up an old speed jack to the tractor's power take-off. The speed jack consisted of a series of belts, pulleys, and drive shafts and was used to transfer power from the tractor to a piece of equipment used to move grain. It was covered only from above by a metal guard, which also shielded the works from sight. At one point the speed jack stopped working. Carroll reached down to inspect the equipment and his glove got caught under the speed jack's metal guard. The machinery severely mangled Carroll's arm.

Carroll and his wife sued Roland. Following a jury trial, the district court directed a verdict for Roland on Carroll's claims based on premises liability and employer/employee duties. The court submitted only a negligence claim based on Restatement (Second) of Torts section 392(b). The jury returned a verdict in favor of Roland.

Carroll appeals. He contends the court erred in various evidentiary rulings related to the testimony of Roland's expert witness, Dale Gumz. Carroll's main complaint is that Gumz testified over objection about a legal standard. Carroll argues Gumz's statement that farmers should rely on equipment safety devices was testimony constituting a legal opinion that sought to alter Roland's standard of care. Carroll further argues the court erred in sustaining an objection to his cross-examination of Gumz on the same issue.

Carroll also contends the court denied his attempt on cross-examination to cast doubt on Gumz's credibility by showing the jury Gumz had agreed to be an expert for Roland before Gumz received any of the information on which he ultimately based his opinion. Carroll asserts the court erred in sustaining objections to questions designed to show the shaft and shield did not conform to certain industry standards upon which Gumz relied in forming his opinions.

Next, Carroll argues the court erred in failing to instruct the jury on a theory of liability outlined in Restatement (Second) of Torts section 392. This section provides,

Chattel Dangerous for Intended Use. One who supplies to another, directly or through a third person, a chattel to be used for the supplier's business purposes is subject to liability to those for whose use the chattel is supplied, or to those whom he should expect to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by persons for whose use the chattel is supplied

(a) if the supplier fails to exercise reasonable care to make the chattel safe for the use for which it is supplied; or

(b) if he fails to exercise reasonable care to discover its dangerous condition or character, and to inform those whom he should expect to use it.

The district court submitted the negligence claim under subsection (b). Carroll complains the court should have submitted an instruction to include section 392(a) which would have informed the jury that Roland had a duty to exercise reasonable

care in making his equipment safe. Carroll contends the finder-of-fact must decide whether this duty required Roland, exercising reasonable care, to make modifications to the speed jack.

Carroll also asserts the court erred when it directed a verdict on his claim that Roland owed him a duty as an employer. He argues there was sufficient evidence of an employer/employee relationship for the claim to go to the jury, including evidence that his work was not gratuitous; he helped Roland with the understanding that there was a steak dinner in the offing.

Finally, Carroll contends the court erred when it directed a verdict on the premises liability claim. Carroll argues there was sufficient evidence to support a finding on each element of the claim. Roland asserts error is not preserved on this issue.

## II. Scope of Review

 Our scope of review for all issues in this appeal challenging the trial court's grant of the motion for directed verdict is for correction of errors at law. *Rife v. D.T. Corner, Inc.*, 641 N.W.2d 761, 766 (Iowa 2002) (citing *McClure v. Walgreen Co.*, 613 N.W.2d 225, 230 (Iowa 2000)). We consider the evidence in the light most favorable to the non-moving party. *Id.* "If there is substantial evidence in the record to support each element of the claim, we must overrule the motion." *Id.* If reasonable minds could reach different conclusions based upon the evidence presented, the issue must be submitted to the jury for determination. *Id.*

 Our scope of review as to certain evidentiary rulings made by the trial court is for abuse of discretion. *State v. Rodriquez*, 636 N.W.2d 234, 239 (Iowa 2001) (citing *Williams v. Hedican*, 561 N.W.2d 817, 822 (Iowa 1997)). An abuse of discretion exists when the court exercises its discretion "on grounds or for reasons

clearly untenable or to an extent clearly unreasonable." *Rodriquez*, 636 N.W.2d at 239.

## III. Restatement (Second) of Torts Section 392

Carroll requested a jury instruction based on Restatement (Second) of Torts sections 392(a) and (b). In interpreting section 392(a), the court concluded the duty to "make safe" means that a supplier of chattel must modify or retrofit. The court determined retrofitting was not an issue in the case because the law in Iowa does not impose a duty on a "supplier" of chattel to retrofit equipment. Accordingly, the trial court did not instruct the jury on section 392(a). The court only instructed the jury on the duty owed by a supplier of a chattel as articulated in section 392(b). Under this section Roland had a duty to do two things: (1) to inspect for a defect, and (2) to inform anyone expected to use it of any defects found. We must consider whether the trial court erred in failing to instruct the jury on Carroll's theory of liability premised upon Restatement (Second) of Torts section 392(a).

We have cited Restatement section 392 with apparent approval in *Maguire v. Pabst Brewing Co.*, 387 N.W.2d 565 (Iowa 1986), and in *Spaur v. Owens–Corning Fiberglas Corp.*, 510 N.W.2d 854 (Iowa 1994). In both cases, we concluded section 392 was not applicable because certain facts necessary to support such a claim were absent. Section 392 requires proof that the supplier of the chattel has "an interest in the consumer's use of the product and this must be a continuing business interest." *Spaur*, 510 N.W.2d at 864. In *Maguire* and *Spaur*, evidence necessary for a claim based on section 392 was lacking because in both cases possession or control of the chattel transferred to a third party. *Spaur*, 510 N.W.2d at 864 (supplier's busi-

ness purpose does not continue after possession or control of the chattel has been transferred to someone else); *Maguire*, 387 N.W.2d at 571 (meaning of "business purpose" within section 392 does not embrace situation where possession or control of chattel transferred to another). We are called upon to decide whether Iowa law recognizes section 392 as an appropriate guide to determine whether a duty exists when a person is injured by a supplier's chattel.

■■■ In general, we look to the Restatement not as the law but as a guide. At times, it may be appropriate to cite certain sections of the Restatement as they may assist in our determination of state law. *See, e.g., Lovick v. Wil–Rich*, 588 N.W.2d 688, 695–96 (Iowa 1999) (adopted restatement section to assist the jury in analyzing the reasonableness of manufacturer's conduct after it acquires knowledge of defect in product post-sale). In the case before us, Carroll contends Roland breached the duty of care imposed upon him as a supplier of chattel. Section 392 articulates various factors to help in the determination of whether Roland negligently supplied the speed jack to Carroll. "A trial court has a duty to give the jury a clear understanding of what they need to decide." *Id.* at 695 (citation omitted). The judge must give requested instructions to the jury if they embody the applicable law and are not found in other instructions.

*Id.* Carroll requested an instruction based on sections 392(a) and (b). We find the Restatement (Second) of Torts section 392 to be useful in guiding the jury in cases dealing with the liability of a supplier of chattel for injuries suffered by those to whom the chattel was supplied.

We first address the interpretation of section 392. We note that we were unable to find any authority discussing the interpretation of section 392(a) or defining what it means to "make the chattel safe." [1] Sections 392(a) and (b) are not exclusive of one another. If we found that section 392(a) could be read alone, this could effectively impose liability upon a supplier for injuries caused by latent conditions not discoverable. That is, section 392(a) read independently would mean that a supplier is liable for an injury if the supplier failed to exercise reasonable care to make the chattel safe. The fact that a person is injured alone would indicate the supplier failed to exercise reasonable care to make the chattel safe. [2] Such an interpretation would impose the same standard of strict liability upon a supplier as it does upon a manufacturer. Under a simple reading of section 392(a), a supplier would be liable for even latent defects in a product that a reasonable person would not discover. To the extent section 392 contemplates such a harsh result, we reject it and instead adopt a modified version of that provision.

1. However, without explicitly addressing what it means to make chattel safe, one New York case indicated reasonable care to make the chattel safe "may include the furnishing of safety devices to avoid an unreasonable risk of harm when the chattel is used in the manner for which it is intended." *Snyder v. Kramer*, 94 A.D.2d 860, 463 N.Y.S.2d 591, 593 (N.Y.App.Div.1983). Research fails to reveal anything but cases focusing primarily on the failure to warn. *See, e.g., Fritz v. Yeager*, 790 A.2d 469 (Del.2002).

2. This is analogous to the situation where no direct evidence of negligence is available so the plaintiff instead uses circumstantial evidence to prove negligence. One such type of circumstantial evidence is res ipsa loquitur. *Novak Heating & Air Conditioning v. Carrier Corp.*, 622 N.W.2d 495, 498 (Iowa 2001). Res ipsa loquitur applies "when (1) the injury is caused by an instrumentality under the exclusive control of the defendant, and (2) the occurrence is such that in the ordinary course of things would not happen if reasonable care had been used." *Id.*

We choose to impose in section 392(a) a duty to first inspect the chattel. Therefore, a supplier has a duty to use reasonable care to discover a dangerous condition or character.[3] Then, upon finding such a condition, the supplier must either make the chattel safe or warn expected users. If the supplier undertakes to make the chattel safe, this may include modification and/or retrofitting. Under this interpretation, a supplier is not liable for injuries if a reasonable person would not have discovered the dangerous condition or character. A supplier is liable for injuries if he or she failed to use reasonable care to inspect the chattel *and* the supplier either failed to use reasonable care to make the chattel safe or to warn others. *See Larner v. Torgerson,* 93 Wash.2d 801, 613 P.2d 780, 783 (1980) ("Section 392 places upon the supplier the duty to make a reasonable inspection of the chattel and then either to repair any dangerous defects that he discovers or warn those who might be expected to use it of the defects.").

We now determine whether the facts before us warrant an instruction under this section. The main inquiry is whether Roland is a "supplier" as the term is used in the Restatement. Section 388 of the Restatement defines a supplier as

> any person who for any purpose or in any manner gives possession of a chattel for another's use, or who permits anoth-

er to use or occupy it while it is in his own possession or control. . . .

Restatement (Second) of Torts § 388 cmt. *c.* Section 392 restricts the definition of a "supplier" to include only those who give chattel to a third person to be used for the supplier's business purposes.

Here, the facts support a finding that Roland was a supplier. We do not have before us a case similar to *Maguire* or *Spaur* in which control transferred to a third person. Roland, as the owner of the speed jack, controlled who could use it.[4] Roland could also control the manner in which the speed jack was used and for what purposes it would be used. He explicitly gave Carroll use of the speed jack. With the speed jack, Carroll worked on Roland's farm by unloading one of the silos. Carroll's work inured solely to Roland's benefit. Control and possession of the speed jack remained with Roland at all times. Roland presented no evidence to suggest he did not supply the chattel to Carroll to be used in furtherance of Roland's business interests.

Because we have found Roland was a supplier of chattel used in his farm business, section 392(a) is applicable to the case before us. If there was evidence he failed to use reasonable care to inspect the chattel and to make it safe,[5] the court erred in failing to submit to the jury a charge of negligence based upon Restatement (Second) of Torts section 392(a) and

---

3. The duty to make a reasonable inspection is analogous to the duty of inspection imposed upon one who permits another to come upon his land for his business purpose. *See* Restatement (Second) of Torts § 392 cmt. *a.*

4. Though ownership of the chattel was present in this case, section 392 states ownership is immaterial. Restatement (Second) of Torts § 392 cmt. *c.* "It is enough that [the supplier] has had possession or control of it for the purpose of using it in connection with his

business, and that he has supplied it for such purpose." *Id.*

5. Restatement (Second) of Torts sections 388 through 390 apply to determine the liability of those who, for any purpose, supply chattel for others' use. Section 388 provides a supplier is liable if he "knows or has reason to know that the chattel is or is likely to be dangerous" and fails to so warn. Unlike section 392, section 388 does not impose upon the supplier a duty of inspection.

(b). It could be urged the jury already found Roland did not fail to discover a dangerous condition or fail to warn Carroll of the condition under section 392(b). However, there are multiple reasons the jury could have found Roland not liable under 392(b) and we will not speculate as to the jury's findings. Because sections 392(a) and (b) are so intertwined given our interpretation of the Restatement, the court must submit a jury instruction based on both sections. A jury instruction including both sections 392(a) and (b) may have changed the ultimate outcome of the case. We reverse and remand for a new trial.

## IV. Expert Witness Testimony

■ Carroll argues the court erred in evidentiary rulings admitting testimony offered by a defense expert and limiting Carroll's cross-examination of that expert. Because we remanded this case for a new trial, these matters are likely to arise again. As such we will rule on the evidentiary issues raised by Carroll. Carroll argues the court erred in permitting the expert to testify to a legal conclusion. Carroll also asserts the court erred in refusing to allow him to question the expert on the date of his retention by the defense and on the standards he reviewed in forming his opinion.

■ In general, whether a witness may testify as an expert with reference to a particular topic is within the trial court's discretion. *See Hyler v. Garner*, 548 N.W.2d 864, 868 (Iowa 1996). "We are committed to a liberal rule on admission of opinion testimony, and only in clear cases of abuse would the admission of such evidence be found to be prejudicial." *Leaf v. Goodyear Tire & Rubber Co.*, 590 N.W.2d 525, 531 (Iowa 1999) (quoting *Iowa–Illinois Gas & Elec. v. Black & Veatch*, 497 N.W.2d 821, 827 (Iowa 1993)).

Carroll argued Roland did not satisfy the applicable standard of care in failing "to make his farm equipment safe." Carroll called Bruce Johnson, an expert witness, to testify on this issue. Plaintiffs' counsel asked Johnson whether there was "anything that could have been done to make the shaft safe?" Johnson answered the existing shaft "was not adequate." Johnson also testified Roland should have modified the equipment before the accident by constructing a shield of sorts out of PVC pipe.

In response to Johnson's expert testimony, Roland called Dale Gumz as an expert witness. Defense counsel asked Gumz: "Should a farmer be able to rely on the safety device that he purchases with the particular product or implement?" Counsel for plaintiffs objected arguing the question called for a legal conclusion. The court overruled the objection and Gumz answered:

> The farmer not only should rely on the safety device, but we want him—as safety engineers ... to rely on the safety devices that are sold with the equipment and not to modify or change or jury-rig changes, other types of safety devices. We want him to use the original manufacturer's equipment.

■ Carroll argues the question Gumz answered called for a legal conclusion. Gumz's testimony at trial dealt only with the issue of whether Roland should have modified his speed jack. His testimony regarded manufacturers' expectations with respect to farmers' use of their products. *See Wright v. Brooke Group Ltd.*, 652 N.W.2d 159, 167 (Iowa 2002) (while not determinative, consumer expectations remain one factor to consider in design defect cases). Iowa Rules of Evidence provide,

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise.

Iowa R. Evid. 5.702 (2002). In other words, "[e]xpert testimony is admissible if it is reliable and 'will assist the trier of fact in resolving an issue.'" *Rodriquez*, 636 N.W.2d at 245 (quoting *State v. Rains*, 574 N.W.2d 904, 916 (Iowa 1998)). "Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Iowa R. Evid. 5.704.

Carroll does not argue Gumz was unqualified to give such testimony. *See Hyler*, 548 N.W.2d at 868 (witness must be qualified to answer the particular question propounded). Instead, he contends Gumz impermissibly testified to a legal conclusion. We disagree. Gumz merely gave his expert opinion on whether a farmer should rely on the safety of farm equipment. His testimony dealt with manufacturers' and farmers' expectations in the use of farm equipment. Such testimony is not a legal conclusion properly made only by the trier of fact.

Gumz is an expert in safety engineering matters, mechanical engineering design matters, and accident investigations. Safety and design matters of farm implements are not issues within the average layperson's knowledge. As a safety expert, Gumz's testimony assisted the trier of fact to understand the desired manner of use for a farm implement as intended by the manufacturer. Based on these facts, we find Gumz was properly allowed to testify on the issue of manufacturers' and farmers' expectations for use of farm implements and their safety devices.

Carroll also argues the trial court erred in refusing to allow him to cross-examine Gumz on his opinion testimony regarding farmers' rights to rely on the safety of farm equipment and what standards he reviewed in preparing for his testimony or in forming his opinions. Because the court properly admitted the opinion testimony, it also should have permitted Carroll to question Gumz on these issues.

The purpose of cross-examination is to test the veracity of statements a witness made and to weaken or disprove the opposing case. 98 C.J.S. *Witnesses* § 447, at 422 (2002). Opposing counsel is free to cross-examine an expert witness and challenge the strength of his or her testimony. *See, e.g., Olson v. Nieman's, Ltd.*, 579 N.W.2d 299, 309 (Iowa 1998) (opposing counsel may question expert on some flawed assumptions in testifying going to the weight of the expert's opinion). This includes the ability of opposing counsel to question an expert on the standards that he or she reviewed before forming an opinion. None of these issues pertains to the admissibility of such evidence, but only to the weight to be given such expert opinion. *Id.; Hutchison v. Am. Family Mut. Ins. Co.*, 514 N.W.2d 882, 885 (Iowa 1994). The cross-examination of Gumz as to what formed his opinion should have been allowed.

Finally, Carroll argues the trial court erred in limiting his cross-examination of Gumz as to the date defense counsel retained him as an expert witness. It could be contended Carroll's offer of proof on this issue, though scant, was suggesting that Gumz was a hired gun—a person paid for favorable testimony. Carroll offered this testimony to prove the expert was

willing to testify in favor of the defense before knowing the facts of the case. Such testimony is admissible to challenge an expert's credibility and should have been allowed.

## V. Employer/Employee Claim

■ We now turn to the issue of whether the court erred in directing a verdict in Roland's favor on Carroll's claim for breach of duty by an employer. On appeal, Carroll contends he and his brother had an employer/employee relationship. Carroll asserts he agreed to help Roland with the harvest in return for a steak dinner. At trial, Carroll testified there was no contract for hire regarding the work he would do on his brother's farm. He also testified it was more of a "helping relationship" for which he did not expect to be paid. Carroll was under no obligation to do any work and could leave the farm at any time. The trial court determined the relationship between the brothers "was an open, voluntary relationship and association ... it was purely voluntary." As such, the court granted Roland's motion for directed verdict on this claim.

■ Carroll asserts the trial court should not have granted a directed verdict on his employee/employer claim.[6] Wheth-er an employee/employer relationship exists is not determined by one particular fact or circumstance.[7] 30 C.J.S. *Employer–Employee* § 6, at 19 (1992). Rather, we look to all the circumstances of a case to decide the nature of the relationship. *Id.* at 20. In making this determination, we look foremost to the intention of the parties. *Henderson v. Jennie Edmundson Hosp.*, 178 N.W.2d 429, 431 (Iowa 1970). We may also consider, for example, the actual relationship that exists between the parties and the extent to which the parties are economically interdependent. 30 C.J.S. *Employer–Employee* § 6, at 20. We may also consider the fact of compensation and the manner of paying it. *Uhe v. Cent. States Theatre Corp.*, 258 Iowa 580, 581, 139 N.W.2d 538, 539 (1966); 30 C.J.S. *Employer–Employee* § 11, at 24.

The record unequivocally reflects Roland never intended or considered their relationship as that of employer and employee. Carroll testified he did not view himself as any type of employee. Even though Roland had a right to tell Carroll what to do and how to do it, this does not transform their relationship into that of employer and employee. Roland did not pay any wages to Carroll for his help during the harvest. Carroll admitted he

---

6. Carroll argues that if an employer/employee relationship existed, Roland's duty of care would have been to provide a reasonably safe workplace and equipment. Such a finding, Carroll asserts, would result in the application of pure comparative fault. *See Ries v. Steffensmeier*, 570 N.W.2d 111, 113 (Iowa 1997). Though there may be other consequences of such a finding, Carroll does not urge them on appeal.

7. Carroll asks us to consider a number of factors in determining whether he was Roland's employee. Among those factors are the right to control the mode of doing the work, the right of supervision, the power to terminate the relationship, who furnishes the materials and appliances to be used, and the method of payment. *See, e.g., Gaffney v. Dep't of Employment Servs.*, 540 N.W.2d 430, 433, (Iowa 1995) (differentiating employee from independent contractor); *Iowa Mut. Ins. Co. v. McCarthy*, 572 N.W.2d 537, 542–43 (Iowa 1997) (in determining whether person is employee or independent contractor, primary focus is extent of control). These considerations have primary force in an analysis to determine whether a person is an employee versus an independent contractor. They have not been articulated as factors to consider in deciding whether an employer/employee relationship exists. If these factors are to be considered at all, it is merely as an aid in determining the nature of the relationship. *See McCarthy*, 572 N.W.2d at 542.

did not expect to be paid for his work. There is no evidence in the record to suggest Carroll and Roland intended their relationship to be one of employer/employee. A promised steak dinner with your brother at the end of a long harvest day is insufficient to transform Carroll into an employee. Given these facts, we conclude Carroll was not Roland's employee.

Ordinarily, the question of whether an employment relationship exists is one of fact that should be decided by the trier of fact. *See Fletcher v. Apache Hose & Belting Co.*, 519 N.W.2d 839, 840 (Iowa Ct. App.1994) (determination of whether employment relationship existed between employee of temporary service agency and agency's customer was factual question to be determined based on evidence); *see also Ctr. Mut. Ins. Co. v. Thompson*, 618 N.W.2d 505, 511 (N.D.2000) (existence of employment relationship is ordinarily a question of fact); *Stenvik v. Constant*, 502 N.W.2d 416, 420 (Minn.Ct.App.1993) (existence of employment relationship is question of fact if it turns on disputed testimony). In this case, the judge reviewed the evidence on the issue. Finding insufficient evidence to conclude Carroll was Roland's employee, the court directed a verdict in favor of Roland. *See Vasconez v. Mills*, 651 N.W.2d 48, 52 (Iowa 2002) ("if, at the close of all the evidence, the record is insufficient to support a party's theory of recovery or defense, the court need not submit the theory to the jury and may direct a verdict on the issue as a matter of law"). As a matter of law, we conclude there were not enough facts for the jury to decide this issue. As such, we conclude the trial court correctly granted Roland's motion for directed verdict on the employer/employee claim. We affirm.

## VI. Premises Liability Claim

■ Finally, Carroll argues the trial court erred in directing a verdict against Carroll on his premises liability claim. We decline to address this issue finding Carroll waived this claim. Roland moved for a directed verdict on the premises liability claim at the conclusion of Carroll's case in chief. Carroll did not resist the motion on the express condition that the court allow Carroll to submit his claim under section 392. In other words, Carroll said he would not object to a directed verdict on the premises liability claim *if* the court instructed the jury on *all* of section 392. The court granted Roland's motion for directed verdict.

After the parties presented all of the evidence, the trial court submitted an instruction to the jury based only upon section 392(b). This instruction was inconsistent with the condition Carroll articulated when he responded to the motion for directed verdict. When the court did not satisfy Carroll's condition, Carroll's attorney had a duty to object to the court's proposed instructions and request inclusion of the premises liability claim. Carroll waived this error by failing to object to the unsatisfactory instruction. *See State v. Romeo*, 542 N.W.2d 543, 552–53 (Iowa 1996) (counsel waived error when he failed to object to prosecutor's allegedly improper remarks at the time they were made); *State v. Jewett*, 219 N.W.2d 559, 560 (Iowa 1974) ("it is sound law and logic that a party may not sit by and permit the court to commit inadvertent error without protest, and then complain for the first time in his motion for a new trial or in the appellate court"); *In re J.D.B.*, 584 N.W.2d 577, 581 (Iowa Ct.App.1998) (waiver of error where party failed to object to the original or continued removal of child and did not resist the adjudication on the grounds pled in CINA petition). We affirm.

## VII. Conclusion

Given our interpretation of the Restatement (Second) of Torts section 392, the

trial court erred in refusing to instruct the jury on sections 392(a) and (b). We reverse and remand for a new trial. The trial court did not abuse its discretion in allowing Gumz's expert opinion as to the intent behind manufacturers' design of farm implements and safety devices. The court, however, should have allowed opposing counsel to cross-examine Gumz on that issue. Carroll also should have been permitted to question Gumz on the date Roland hired Gumz to testify as an expert for the defense and the standards Gumz reviewed in forming his opinions. Carroll waived his premises liability claim by not objecting to the court's jury instructions. Finally, the trial court did not err in granting a directed verdict in favor of Roland on the employer/employee claim. We affirm on these issues.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**