# IN THE COURT OF APPEALS OF IOWA

No. 19-2034
Filed July 21, 2021

**IN THE MATTER OF THE ESTATE OF GLADYS R. TROENDLE, Deceased.**

**STEVEN TROENDLE,**
        Plaintiff-Appellant/Cross-Appellee,

**vs.**

**MICHELE TROENDLE, Individually and in her capacity as Co-Executor,**
        Defendant-Appellee/Cross-Appellant.
_____

**MICHELE TROENDLE,**
        Plaintiff,

**vs.**

**STEVEN TROENDLE,**
        Defendant.
_____

        Appeal from the Iowa District Court for Allamakee County, Alan Heavens,

Judge.

        Steven Troendle appeals a civil jury verdict.  Michele Troendle cross-

appeals the damages awarded.  **AFFIRMED ON APPEAL; REVERSED AND**

**REMANDED ON CROSS-APPEAL.**

        Dennis G. Larson, Decorah, for appellant.

        Jeffrey R. Tronvold of Eells & Tronvold Law Offices, P.L.C., Cedar Rapids,

for appellee.

        Considered by Mullins, P.J., and May and Schumacher, JJ.

**MAY, Judge.**

Steven Troendle appeals a jury award in favor of his sister, Michele Troendle. Michele cross-appeals. We affirm as to Steven's appeal. We reverse and remand as to damages only on Michele's cross-appeal.

## I. Facts and Prior Proceedings

Steven and Michele are the adopted children of Gladys and Richard Troendle. In 1964, Gladys and Richard executed a joint will. It devised and bequeathed all of their property "to the survivor" spouse or, if both "should die in a common disaster," to Steven and Michele, "share and share alike."

Then in 1986, Richard died. That same year Gladys drafted a new will. It directed her estate to be divided between Steven and Michele, "share and share alike."

Eventually, Michele moved back on the family farm. Meanwhile, Steven lived in town with his family.

Gladys's health began to deteriorate. She had a stroke in 2002. After that, she required assistance from Michele to get around the home.

Gladys began discussing possible changes to her will. She told Steven's sons, who rented farmland from her, that she intended for Michele to inherit the family farm.

Gladys's health continued to deteriorate. Michele continued to provide her with day-to-day care. In 2015, Gladys met with an attorney and executed a new will. Unlike her prior will, Gladys's 2015 will left her entire estate to Michele. And it stated:

> I am deliberately omitting my son, Steven Troendle as a beneficiary . . . . I hold no ill will against my son Steven, but wish to leave my entire estate to my daughter Michele because she has a greater financial need for the inheritance and because she has cared for me for many years without any compensation through sickness and infirmity.

Then on March 16, 2016, Gladys died. On April 29, Michele provided Steven with a copy of Gladys's 2015 will. On May 2, Steven initiated probate proceedings using the 1964 will and was appointed executor. Michele became co-executor on July 11.

Michele continued to live on the farm. However, because Steven and Michele served as co-executors, any maintenance or improvements to the property had to be agreed upon by both Michele and Steven. Several times the two could not come to agreement about how to address issues with the property.

Steven contested the 2015 will, claiming Michele exerted undue influence on Gladys to persuade her to change her will. Michele filed a separate civil lawsuit against Steven stemming from his conduct as an individual and as executor of Gladys's will. Michele asserted ten claims against Steven: abuse of process, tortious interference with inheritance, breach of fiduciary duty, conversion, defamation, fraud, civil conspiracy, concert of action, intentional infliction of emotional distress, and malicious prosecution.[1] Steven moved to consolidate the two cases, which the court granted over Michele's objection. The matter proceeded to a jury trial. Following presentation of the evidence, Steven moved

---

[1] The petition also named Steven's attorney and several of his family members as defendants. Those individuals are not a part of this appeal.

for a directed verdict, which the district court denied.[2] Seven of Michele's claims were submitted to the jury, namely: abuse of process; tortious interference with inheritance; breach of fiduciary duty; conversion; fraud; intentional infliction of emotional distress; and malicious prosecution. The court also submitted Steven's undue influence claim.

The jury found Steven did not prove the 2015 will was the result of undue influence by Michele. And the jury found Michele did not establish the elements of her fraud claim. But the jury found Michele did prove her claims of intentional infliction of emotional distress, breach of fiduciary duty, conversion, interference with inheritance, abuse of process, and malicious prosecution. As for damages, the jury awarded $639.13 in actual damages and $50,000 in punitive damages on Michele's conversion claim. In addition, the jury awarded $24,300 in actual damages on Michele's malicious prosecution claim. But the jury awarded no damages on Michele's claims of intentional infliction of emotional distress, breach of fiduciary duty, interference with inheritance, and abuse of process.

Following trial, Steven moved for judgment notwithstanding the verdict (JNOV) or for new trial. Michele moved for new trial or additur. The court denied the motions; entered judgment against Steven for $74,939.13; and removed Steven as co-executor of Gladys's estate.

Steven appeals, and Michele cross-appeals. Additional facts will be discussed as necessary.

---

[2] The court initially granted the motion for directed verdict with respect to the conversion claim and then later changed its ruling.

## II. Discussion

### A. Steven's claims

#### 1. JNOV

For his first claim, Steven contends the district court should have granted his motion for JNOV. "We . . . review a district court ruling on a motion for judgment notwithstanding the verdict for correction of errors of law." *Thornton v. Am. Interstate Ins. Co.*, 897 N.W.2d 445, 460 (Iowa 2017) (citation omitted).

"The purpose of [JNOV] is to allow the district court an opportunity to correct any error in failing to direct a verdict." *Easton v. Howard*, 751 N.W.2d 1, 4 (Iowa 2008). "Our role is to decide whether there was sufficient evidence to justify submitting the case to the jury when viewing the evidence in the light most favorable to the nonmoving party." *Smith v. Iowa State Univ. of Sci. & Tech.*, 851 N.W.2d 1, 18 (Iowa 2014) (citation omitted). "Every legitimate inference which can be reasonably made from the evidence is considered, and if reasonable minds can differ on the issue, it is for the jury to decide." *Thacker v. Eldred*, 388 N.W.2d 665, 670 (Iowa Ct. App. 1986) (citation omitted). JNOV is appropriate "only in rare circumstances." *Huss v. State*, No. 16-2145, 2019 WL 478794, at *2 (Iowa Ct. App. Feb. 6, 2019).

So we must decide if this case is one of those rare circumstances. But to do so, Steven must first present fully developed arguments for us to consider. This is where we reach a significant roadblock. Steven's appellate briefing presents scattershot arguments that are under developed or not supported by relevant legal authority. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."); *Midwest Auto. III, LLC v. Iowa*

*Dep't of Transp.,* 646 N.W.2d 417, 431 n.2 (Iowa 2002) (finding a "random assertion of error insufficient to preserve the issue for appellate review"); *cf. Mahnesmith v. State*, No. 19-0877, 2020 WL 7868233, at *5 (Iowa Ct. App. Dec. 16, 2020) (noting a party "cannot plant seeds [of an argument] and walk away expecting the court to nurture them to maturity to discover their true identity"); *Shcharansky v. Shapiro*, No. 19-0739, 2020 WL 2487620, at *10 (Iowa Ct. App. May 13, 2020) (determining a motion for JNOV "was not presented with enough specificity for us to review the issue on appeal"). Moreover, as Michele points out, many of Steven's claims are not preserved because he did not first bring them in his motion for directed verdict. *See Konicek v. Loomis Bros., Inc.*, 457 N.W.2d 614, 617 (Iowa 1990) ("A [JNOV] must stand or fall on the grounds stated in the motion for directed verdict. On appeal, our review is limited to those grounds."). As to the preserved and sufficiently developed arguments, we conclude the evidence presented was sufficient to support the jury's verdicts. The district court did not err in denying the JNOV motion.

*2. Directed Verdict*

Steven also argues the district court erred in denying his motion for directed verdict on each count. We review the court's denial of a motion for directed verdict for errors at law. *Heinz v. Heinz*, 653 N.W.2d 334, 338 (Iowa 2002). "We consider the evidence in the light most favorable to the non-moving party." *Id.* "If reasonable minds could reach different conclusions based upon the evidence presented, the issue must be submitted to the jury for determination." *Id.* "If there is substantial evidence in the record to support each element of the claim," the district court must overrule the motion. *Id.* (citation omitted).

On appeal, Steven's argument focuses on the abuse-of-process claim.[3] To recover on the abuse-of-process claim, the jury instructions required Michele to establish:

> 1. On or about the 2nd day of May, 2016, Seven Troendle intentionally used the probate court to initiate probate proceedings with a will from 1964 after[4] he knew another will should have been submitted.
> 2. Steven Troendle used the legal process primarily for harassment, delay and to place himself in the position of [e]xecutor to which he was not entitled, and not for its intended use which is explained in [i]nstruction [n]o. 27.[5]
> 3. Steven Troendle's use of the legal process for the improper purpose was a cause of Michele Troendle's damage.
> 4. The amount of damage.

Steven argues he could not be liable for abuse of process because, when he initiated probate proceedings using the 1964 will, it was yet to be determined

---

[3] Steven attempts to incorporate all of the arguments from his motions for directed verdict and JNOV into his appellate brief by stating, "Arguments made in both [m]otions are incorporated by reference and are further addressed below." This is not sufficient. The appellant must present and develop their arguments in their appellate brief. It is not for this court to chase down the parties' arguments; it is for the parties to present their arguments before this court for our consideration.

Steven's brief also raises an argument relating to the tortious-interference claim. However, he did not raise the argument in either his written or oral motion for directed verdict. So we will not consider it on appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

Steven also briefly mentions the conversion claim; but he does not develop his argument beyond a passing reference. So we deem it waived. *See Midwest Auto., LLC*, 646 N.W.2d at 431 n.2.

[4] The word "which" was crossed out and replaced with "after" in handwriting. This alteration does not change our analysis.

[5] Instruction twenty-seven stated:

> The wrong act involved in "abuse of process" is using the process for a reason different from the purpose for which the process was designed. For example, it could be using a legal process to force another to take some action or not take some action unrelated to the legal process. The result of the earlier legal proceeding does not matter.
>
> The purpose of probate proceedings is to probate the will of a decedent.

that the 2015 will was valid. He also claims he was entitled to serve as executor and his acts were reasonable.

We note Steven has not provided any supporting legal authority for his argument. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue."). Rather, Steven merely presents his version of events. Michele presented a differing version of events—and a differing explanation of Steven's motivations and conduct. And she presented sufficient evidence to support the elements of her abuse-of-process claim as instructed. So the district court correctly denied Steven's motion for directed verdict.

*3. Reversal of Directed Verdict on Conversion Claim*

Next, Steven argues the district court erred in reversing its ruling on the motion for directed verdict with respect to Michele's conversion claim.[6] Because Steven does not develop his argument, we consider it waived. *Midwest Auto.*, 646 N.W.2d at 431 n.2.

*4. Punitive Damages Award*

Finally, Steven argues the district court should have reduced the punitive damages awarded on the conversion claim because they were excessive. "Appellate review for excessiveness is de novo." *Wolf v. Wolf*, 690 N.W.2d 887, 894 (Iowa 2005). But we again run into an error-preservation issue. On appeal, Steven argues the ratio between actual and punitive damages was constitutionally

---

[6] The court initially granted the directed verdict in anticipation that Steven would promptly return property removed from a security box, including Michele's adoption paperwork, and provide payment for various expenses to Michele.

excessive under *Thornton v. American Interstate Insurance Co.*, 940 N.W.2d 1, 42 (Iowa 2020), and "various cases cited in *Thornton*, such as *Ezzone v. Riccardi*, 525 N.W.2d 388 (Iowa 1994)." But he did not raise this argument in the district court. So error is not preserved. *See Meier*, 641 N.W.2d at 537.[7]

### B. Michele's Claims

For her part, Michele cross-appeals the district court's denial of her motion for new trial or additur. She argues the damages awarded were inconsistent with the jury's liability findings. She asks for "retrial on the issue of damages for the claims of abuse of process, malicious prosecution, interference with inheritance, intentional infliction of emotional distress[,] and breach of fiduciary duty." Alternatively, Michele asks us to "order an additur, and grant a conditional new trial on damages . . . if Michele rejects [our] additur."

"We review the denial of a motion for new trial based on the grounds asserted in the motion." *Fry v. Blauvelt*, 818 N.W.2d 123, 128 (Iowa 2012) (quoting *Estate of Long ex rel. Smith v. Broadlawns Med. Ctr.*, 656 N.W.2d 71, 88 (Iowa 2002)). "If a motion turns on a legal question, such as whether a verdict is inconsistent, we review for correction of errors at law." *Behle v. Youngwirth*, No.

---

[7] Couched within Steven's punitive-damages argument, he also argues the jury's passions were inflamed because of tensions between Michele's attorney and a witness, so he should be granted a new trial as a result of counsel's "improper conduct." But as the district court noted Steven did not object to the testimony or seek any curative measure, so he has failed to preserve error as to that claim. *See State v. Thongvanh*, 398 N.W.2d 182, 187 (Iowa Ct. App. 1986) (holding "[f]or an objection to be timely it must ordinarily be made at the earliest opportunity, once the basis of the objection becomes apparent" and because an objection was not made when it became apparent, error was not preserved).

19-0967, 2020 WL 6157786, at *3 (Iowa Ct. App. Oct. 21, 2020) (citing *Pavone v. Kirke*, 801 N.W.2d 477, 496 (Iowa 2011)).

> In evaluating whether a verdict is inconsistent, we consider whether it "can be reconciled in any reasonable manner consistent with the evidence and its fair inferences, and in light of the instructions of the court." *Hoffman v. Nat'l Med. Enters., Inc.*, 442 N.W.2d 123, 126-27 (Iowa 1989). If it cannot be reconciled because it is so logically and legally inconsistent, the verdict will be set aside.

*Id.*

Here, the jury found Michele established her claims for abuse of process, malicious prosecution, interference with inheritance, intentional infliction of emotional distress, conversion, and breach of fiduciary duty. Under the court's instructions, damage to Michele was an essential element of each of these claims. Moreover, for each of these claims, the marshalling instruction stated, "If Michele Troendle has proved all of these [elements to the relevant claim], Michele Troendle is entitled to damages in some amount." So it was inconsistent for the jury to find Michele satisfied these claims but not award her any damages for some of the claims. *See id.*

Because we cannot reconcile the jury's liability findings with its damages awards for abuse of process, interference with inheritance, intentional infliction of emotional distress, and breach of fiduciary duty, we reverse the verdicts as to damages on these four counts only. We remand for new trial as to the damages on these four counts.[8]  *See Thompson v. Allen*, 503 N.W.2d 400, 401–02 (Iowa

---

[8] Michele's appellate brief also requests "retrial on the issue of damages for the claim[] of . . . malicious prosecution." But the jury awarded her $24,300 in damages on this claim, which is not irreconcilable with the jury's liability finding. So we do not reverse damages as to malicious prosecution.

1993) (ruling that a new trial was required on the issue of damages but not on liability when there was no evidence "that the jury's determination of fault was compromised or affected by the evidence of damages"); *Behle*, 2020 WL 6157786, at *4; *Henson v. City of Davenport*, No. 12-0698, 2012 WL 5951365, at *5 (Iowa Ct. App. Nov. 29, 2012); *Dell v. Hy-Vee, Inc.*, No. 09-0121, 2009 WL 2528095, at *3 (Iowa Ct. App. Aug. 19, 2009).

**III. Conclusion**

We find the bulk of Steven's claims to be waived or not preserved.  As to his properly presented claims, we find no grounds for reversal.  We reverse the damages verdicts for Michele's claims of abuse of process, interference with inheritance, intentional infliction of emotional distress, and breach of fiduciary duty. We remand for new trial as to damages only on those claims only.

**AFFIRMED ON APPEAL; REVERSED AND REMANDED ON CROSS-APPEAL.**