Dale GODBERSEN, Appellee,

v.

Donald G. MILLER, Appellant.

No. 88–218.

Supreme Court of Iowa.

April 19, 1989.

John M. Wharton and Fred L. Morris of Peddicord, Wharton, Thune & Foxhoven, P.C., Des Moines, for appellant.

Steven T. Roth, Storm Lake, for appellee.

Considered by McGIVERIN, C.J., and LAVORATO, NEUMAN, SNELL and ANDREASEN, JJ.

NEUMAN, Justice.

This is a tort action arising out of a tavern brawl in Odebolt, Iowa. The important question on appeal is whether the trial court should have reduced the plaintiff's punitive damage award in proportion to the degree of comparative fault assessed against him by the jury. Because we find no error in the court's entry of judgment on the jury's verdict, and because appellant's other assignments of error furnish no ground for reversal, we affirm.

Viewing the evidence in a light most favorable to the jury's verdict, the following facts emerge. Plaintiff Dale Godbersen and defendant Donald (Donnie) G. Miller were drinking with friends in a tavern called "Mom's Place" when a disagreement arose over who was the better farmer. After a few minutes of arguing, Dale and Donnie stepped outside to clear the air. Without resolving their differences, Donnie got into his car and Dale turned to walk back into the tavern.

Instead of backing out of his parking space, Donnie accelerated his vehicle towards Dale, jumping the curb and stopping short of striking the front wall of the tavern. In his own words, Donnie "drove up there to run [Dale] up on the sidewalk." Dale avoided being hit by jumping behind a pickup parked next to Donnie's car. He then reached toward the open window of Donnie's car to pull the keys out of the ignition. Donnie, meanwhile, put the car in reverse and started to pull away. The driver's door swung open, trapping Dale between Donnie's car and the pickup. Dale hung on to the open door until Donnie backed into another vehicle. The jolt threw Dale to the pavement, rolling him across the street and into the side of a parked car.

Witnesses to this fracas watched Donnie then drive up the street, make a U-turn, and return at a high rate of speed to where Dale was lying. Two bar patrons, checking to see if Dale was all right, quickly moved him out of the street as Donnie's car sped toward them.

Police called to the scene arrested Donnie for drunk driving. Subsequent tests revealed that his blood-alcohol count was .165. Dale was treated at a local hospital for minor injuries and was released. He later began experiencing severe lower back and neck pain which prompted him to seek continuing chiropractic care.

To recover for his injuries, lost wages, and medical expense, Dale sued Donnie in a three count petition. Count I alleged that Dale's injuries were proximately caused by three acts of negligence by Donnie: failure to keep a proper lookout, failure to maintain control of his vehicle, and operating a vehicle while intoxicated. Count II claimed that the negligent acts described in Count I constituted an assault and battery committed with malice and ill will toward Dale and a wanton and reckless disregard for his rights. For this willful behavior, Dale claimed punitive damages. Finally, in Count III, Dale re-alleged that Donnie's intoxicated driving was "reckless, wanton and grossly negligent," thus entitling Dale to exemplary damages.

At trial, in addition to the evidence previously described, the jury was allowed to consider, over Donnie's objection, the testimony of a former Odebolt peace officer concerning Donnie's history of using his motor vehicle as an assault weapon. The testimony revealed that eight years earlier, while Donnie was similarly intoxicated, he

deliberately rammed the deputy's vehicle with his own, pushing it off his property and into the middle of an adjoining roadway. Donnie corroborated the story, maintaining his belief that his actions were lawful.

The jury returned a verdict for Dale in the amount of $3000 compensatory and $12,000 punitive damages. It also found Dale fifty percent at fault for his injuries. In accordance with this special verdict, the district court reduced Dale's award for actual damages to $1500 but entered judgment in full on the punitive damage award. It is from this judgment entry that Donnie now appeals.

■ I. The question is whether the comparative fault principles embodied in Iowa Code chapter 668 (1987) have, in some measure, erased the distinction drawn at common law between compensatory and punitive damages. Donnie contends that they have. He concedes that prior to the enactment of chapter 668, neither negligence nor assumption of the risk were defenses to a punitive damage claim stemming from the reckless or grossly negligent behavior of an intoxicated driver. *See Campbell v. Van Roekel*, 347 N.W.2d 406, 411 (Iowa 1984). He argues, however, that because drunk driving is equivalent to gross and culpable negligence, *see Sebastian v. Wood*, 246 Iowa 94, 106, 66 N.W.2d 841, 848 (1954), and section 668.1 now defines "fault" as an act "in any measure negligent or reckless," punitive damages flowing from such conduct must be reduced pursuant to the statutory requirement that "*any* damages allowed shall be diminished in proportion to the amount of fault attributable to the claimant." Iowa Code § 668.3 (emphasis added).

Though Donnie's argument carries a certain technical appeal, we think he misperceives both the legislative intent underlying chapter 668 and the fundamental purpose of punitive damages. In general, the purpose of section 668.3 is to make defendants pay in proportion to their fault. *See Kopsas v. Iowa Great Lakes Sanitary Dist.*, 407 N.W.2d 339, 341 (Iowa 1987). Correspondingly, any reduction in a plaintiff's

recovery represents a way of making the plaintiff "pay" for his or her proportional responsibility. In other words, section 668.3(1) prevents a plaintiff from being compensated for fault that he or she should fairly bear.

In contrast to this scheme of proportional compensation, punitive damages are designed to exact a penalty from the defendant for conduct that is grossly negligent, wanton, willful or reckless. *See Campbell*, 347 N.W.2d at 410–11. Punishment, not compensation, is the goal. *Id.* Proof of a punitive damage claim—though phrased in terms that semantically fall within the spectrum of acts that the comparative fault statute describes as "in any measure negligent or reckless"—necessarily focuses on the behavior of the defendant, not the plaintiff. The object is deterrence, not proportional recovery.

Because the aim of chapter 668 is proportional compensation, not punishment, we see no applicability of section 668.3(1) to punitive damage awards. In the present case, the trial court properly reduced Dale's compensation for his injuries in proportion to the jury's assessment of the fault he bore for having gotten into the fight in the first place. To similarly reduce the punitive damage award, however, would be contrary to both the compensatory nature of chapter 668 and the public policy underlying punitive damage awards. It would penalize Dale for conduct over which he had no control while letting Donnie's outrageous conduct go unpunished.

Donnie posits the further theory that if the jury's punitive damage award had stemmed from the intentional tort of assault, instead of the negligent tort of intoxicated driving, then the court would not have been compelled to reduce the jury's verdict in proportion to Dale's fault because the underlying claim would have fallen outside the scope of chapter 668. Assuming, without deciding, that chapter 668 does not apply to intentional torts, we think Donnie is relying on a distinction without a difference. Whether the jury's punitive damage award derived from Donnie's assaultive behavior or his intoxicated driving

is immaterial. In either event, the record supports a finding of willful and reckless disregard for the rights of others. It is this behavior to which the punitive award is addressed.

In summary, we hold that the comparative fault principles of section 668.3(1) have no application to a claim of punitive damages. Accordingly, the court properly entered judgment for the plaintiff for the full amount of the jury's punitive damage verdict.

II. We have carefully considered Donnie's remaining assignments of error. Only one merits our attention here.

■ At trial, Donnie's counsel objected to the proposed cross-examination of his client concerning the 1979 incident in which Donnie rammed a car containing two peace officers. The court held an in camera hearing to determine whether this previous incident was sufficiently similar to the present case to justify its admissibility under Iowa Rule of Evidence 404(b).[1] The court then overruled counsel's objection to the cross-examination of Donnie as well as a motion in limine concerning the direct examination of deputy sheriff McKinney.

On appeal, we review such evidentiary rulings under an abuse of discretion standard. *State v. Plaster*, 424 N.W.2d 226, 229 (Iowa 1988). In *Plaster*, we stated that determination of admissibility under rule 404(b) involves a two-step analysis: first, a determination whether the evidence is relevant; second, a determination whether the prejudicial effect of the evidence outweighs its probative value under rule 403. *Plaster*, 424 N.W.2d at 229.

Relevancy is the tendency to " 'make the existence of any fact that is of consequence to the determination of the action more ... or less probable than it would be without the evidence.' " *Id.* (quoting Iowa R.Evid. 401). As we noted in *Plaster*, the test is whether a reasonable person might " 'believe the probability of the truth of the consequential fact to be different,' " if the

evidence were known. *Id.* (quoting 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 401[07], at 401–48 (1986)).

Here, Donnie testified that he "jumped the curb" with his car in order to chase Dale and avoid being accosted by him through the car window. He also asserted that after initially driving away, he returned at a high rate of speed in order to see how badly he had damaged the car he had backed into.

It was in the light of this testimony that the court considered the prior incident. Two deputies had arrested Donnie for intoxication and driven him home. As they backed their car down his farm lane, Donnie jumped into his truck and drove toward them at a high rate of speed. He eventually rammed the front of their car with his own, spinning it around and sending it into the street.

Like the district court, we are convinced that this evidence is relevant. A reasonable person could find Donnie's stated reason for driving towards Dale less probable with evidence of the prior incident than without it.

We must then consider whether the prejudicial effect of this evidence outweighs its probative value. Rule 403 does not exclude *all* prejudicial evidence, only that which is *unfairly* prejudicial. *Plaster*, 424 N.W.2d at 231. To be unfairly prejudicial, evidence must tend to cause a decision to be made on an improper basis. *Id.* Here, the potential is for the jury to decide the current case based on the character displayed by Donnie in the prior incident. Donnie's argument, however, is weakened by the fact that he admitted chasing Dale with his car. To the extent the evidence of the earlier incident corroborated, rather than established, Donnie's intent, it is not unfairly prejudicial.

■ Finally, we address Donnie's contention that the former accident was too remote in time or too dissimilar to qualify for

---

**1.** "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Iowa R.Evid. 404(b).

admission under rule 404(b). As for remoteness, no precise timetable may be set; the question is whether "the elapsed time is great enough to negative any logical connection between the evidence and the fact sought to be established by it." *In re Estate of Poulos*, 229 N.W.2d 721, 726 (Iowa 1975).

Applying the *Poulos* standard here, we are convinced the evidence was not too remote. We perceive nothing about the lapse of eight years that would minimize the connection between Donnie's inclination to run people down in 1979 and his intent to do so today. Moreover, the pattern of intoxication, anger, and the vehicular assault is strikingly similar in both instances. No abuse of the trial court's discretion warranting reversal has been shown.

AFFIRMED.