**Branimir CATIPOVIC, M.D., Plaintiff,**

v.

**PEOPLES COMMUNITY HEALTH CLINIC, INC.; Ronald W. Kemp; IBP, Inc.; Thomas O'Rourke; and Black Hawk County Health Department, Defendants.**

No. C00–2096–LRR.

United States District Court,
N.D. Iowa,
Eastern Division.

Jan. 6, 2003.

Kevin J. Visser, Randall D. Armentrout, Lisa Stephenson, Marcia V. Harris, Moyer

& Bergman, PLC, Cedar Rapids, IA, for plaintiff.

Thomas W. Foley, Mary E. Funk, Nyemaster Goode Voights West Hansell & O'Brien, PC, Des Moines, IA, for Peoples Community Health Clinic, Inc., Ronald W. Kemp, Sharon Duclos, defendants.

Robert D. Houghton, Nancy J. Penner, Shuttleworth & Ingersoll, Cedar Rapids, IA, for Iowa Beef Processors, Inc., Rex Hofer, defendants.

John T. McCoy, Yagla, McCoy & Riley, PLC, Waterloo, IA, for Thomas O'Rourke, Ann Rogers, Black Hawk County Health Dept., defendants.

## ORDER ON MOTION FOR LEAVE TO FILE SECOND AMENDED ANSWER AND CROSS CLAIM

ZOSS, United States Magistrate Judge.

### I. INTRODUCTION

On December 16, 2002, the defendant IBP, Inc. ("IBP") filed a motion for leave to file a second amended answer and cross claim, together with a supporting brief. (Doc. Nos. 109 & 110, respectively) Attached to the motion was a proposed second amended answer and proposed cross claim.

In the proposed cross claim, IBP seeks contribution from the four other defendants, "in the event IBP is found to be liable for Plaintiff's damages." The defendants Thomas O'Rourke and Black Hawk County Health Department (collectively, the "County defendants"), the defendants Peoples Community Health Clinic, Inc. ("PCHC") and Ronald W. Kemp (collectively, the "Clinic defendants"), and the plaintiff Branimir Catipovic, M.D. ("Catipovic"), all have resisted the motion. (Doc. Nos. 102, 103, 105, 106, and 104, respectively) The court now finds the motion is ready for decision.

There are seven counts in Catipovic's Second Amended Complaint (Doc. No. 91). In Counts I through V and Count VII,[1] he asserts causes of action against the County defendants and the Clinic defendants arising out of his dismissal from employment as a medical doctor with PCHC. In Count VI, he asserts that IBP, the County defendants, and Kemp all tortiously interfered with Catipovic's employment contract with PCHC.[2]

Shortly before IBP filed its motion for leave to file a second amended answer and cross claim, Catipovic entered into a settlement agreement with the County defendants and the Clinic defendants that reportedly resolved all of Catipovic's claims against these defendants. Presumably, when the settlement agreement is finalized and fully implemented, the County defendants and the Clinic defendants will be dismissed from the case. The only remaining claim in the case will be Catipovic's tortious interference claim against IBP in Count VI. If IBP is permitted to file its proposed cross claim, the County defendants and the Clinic defendants will remain in the case as defendants in the cross claim.

Catipovic, the County defendants, and the Clinic defendants all resist IBP's motion for leave to file a second amended answer and cross claim,[3] asserting that if IBP is found to be liable on Count VI, its liability would be for an intentional tort (*i.e.,* tortious interference with contract) for which Iowa law does not permit contribution. In addition, the County defendants and the Clinic defendants argue that under Iowa law, IBP is not entitled to contribution from a discharged party.

## II. ANALYSIS

### A. Claim for Contribution by Intentional Tortfeasor

Catipovic's claim against IBP for tortious interference with an employment contract is a common law, intentional tort. *See Sawheny v. Pioneer Hi–Bred Int'l, Inc.,* 93 F.3d 1401, 1408 (8th Cir.1996); *Gibson v. ITT Hartford Ins. Co.,* 621 N.W.2d 388, 399 (Iowa 2001); *Grahek v. Voluntary Hosp. Coop. Ass'n of Iowa, Inc.,* 473 N.W.2d 31, 35 (Iowa 1991). The parties all agree that Iowa law has long prohibited a contribution recovery by an intentional tortfeasor. *See, e.g., Best v. Yerkes,* 247 Iowa 800, 77 N.W.2d 23, 28 (Iowa 1956); *see also, Beeck v. Aquaslide 'N' Dive Corp.,* 350 N.W.2d 149, 169–70 (Iowa 1984); *Hawkeye–Security Ins. Co. v. Lowe Constr. Co.,* 251 Iowa 27, 99 N.W.2d 421, 424–25, 429 (Iowa 1959).

In *Wright v. Haskins,* 260 N.W.2d 536, 539 (Iowa 1977), the Iowa Supreme Court reversed a ruling by a trial judge who had permitted contribution between two intentional tortfeasors, adhering to its precedent on this issue, but commenting that "logic and soundness" favored permitting contribution between intentional tortfeasors. The court found, however, that the case did not present it with "appropriate factual circumstances to expand the right

1. For some unexplained reason, the seventh count is improperly designated as "Count X."

2. PCHC is not named as a defendant in Count VI, although in Count IV Catipovic alleges that PCHC breached the employment contract.

3. Although the deadline for amending pleadings expired July 15, 2001, no party has objected to IBP's motion as untimely. Catipovic's second amended complaint was filed on November 13, 2002. IBP filed its original answer to the second amended complaint on November 22, 2002, and then filed the pending motion for leave to file a second amended answer and cross claim on December 16, 2002. With this background, the court finds IBP's motion should be treated as timely.

of contribution as it stands today in this state." *Id.* The Iowa Supreme Court has continued to adhere to this position, relying upon the Restatement (Second) of Torts section 886A(3), which provides, "There is no right of contribution in favor of any tortfeasor who has intentionally caused the harm." *See, e.g., Reimers v. Honeywell, Inc.,* 457 N.W.2d 336, 339 (Iowa 1990); *Beeck v. Aquaslide 'N' Dive Corp., supra,* 350 N.W.2d at 169–70.

In *Reimers v. Honeywell, supra,* the Iowa Supreme Court discussed this issue in light of Iowa's then recently-enacted Comparative Fault Act, codified in chapter 668 of the Iowa Code. The defendant sought to pursue a contribution claim on a punitive damages settlement against a co-defendant. The court held a party is not entitled to contribution for punitive damages under chapter 668, but commented that the prohibition on contribution for reckless conduct may no longer be valid. "The argument that the legislature rejected *Aquaslide* (and therefore the Restatement) view is certainly tenable. Fault is defined in the Act as 'acts or omissions that are in any measure negligent *or reckless.*'" *Id.,* 457 N.W.2d at 339 (*emphasis provided*) (citing *Godbersen v. Miller,* 439 N.W.2d 206, 209 (Iowa 1989)). The court in *Reimers* further held the following:

> [The defendant to the cross claim] goes so far as to contend that the prohibition extends beyond barring contribution recoveries for punitive damages. [The defendant] contends that the prohibition also bars a tortfeasor against whom punitive damages were awarded from seeking contribution for any damages. We

think this would take the prohibition of contribution recovery too far. The prohibition is aimed at outrageous conduct, not tortfeasors personally. When and if the conduct giving rise to punitive damages can be separated from damages arising from the tortfeasor's other, less egregious, conduct there is no reason to bar contribution for that part of the damages which was not punitive in nature.

*Id.*

IBP argues, "Given that punitive damages are usually reserved for intentional tort cases, the *Reimer[s]* Court's discussion contemplates and supports the expansion of contribution to intentional tortfeasors." (Doc. No. 110, p. 6) IBP also points out that the prohibition against contribution in the Restatement (Second) of Torts has been dropped in section 23 of the Restatement (Third) of Torts—Apportionment of Liability.[4]

From these authorities, it is clear that Iowa law prohibits IBP from pursuing the contribution claim it proposes to assert in its cross claim. However, it is equally clear the Iowa Supreme Court has suggested, in dicta, that it might change Iowa law to permit such a cause of action, given the proper vehicle.

### B. Claim for Contribution Against Discharged Party

The County defendants and the Clinic defendants argue that even if IBP were to prevail on its argument that an intentional tortfeasor is entitled to pursue a contribution claim under Iowa law, IBP would be precluded from doing so by the settlement

---

**4.** The Restatement (Third) of Torts—Apportionment of Liability, § 23(a) provides, "When two or more persons are or may be liable for the same harm and one of them discharges the liability of another by settlement or discharge of judgment, the person discharging the liability is entitled to recover contribution from the other, unless the other previously had a valid settlement and release from the plaintiff." Comment (*l*) to section 23 states, "A person who can otherwise recover contribution is not precluded from receiving contribution by the fact that he is liable for an intentional tort."

between Catipovic, the County defendants, and the Clinic defendants. Their argument is based on the provisions of Iowa's Comparative Fault Act, Iowa Code chapter 668. IBP responds, without authority or argument, by asserting the Act "does not apply to this case." (Doc. No. 110, p. 8)

Under the Act, "fault" is defined to include "one or more acts or omissions that are in any measure negligent or reckless toward the person or property of the actor or others, or that subject a person to strict tort liability." IOWA CODE § 668.1(1). The Comparative Fault Act includes the following additional pertinent provisions that relate to contribution among tortfeasors:

> 2. In the trial of a claim involving the fault of more than one party to the claim, including third-party defendants and persons who have been released pursuant to section 668.7, the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating all of the following:
>
> a. The amount of damages each claimant will be entitled to recover if contributory fault is disregarded.
>
> b. The percentage of the total fault allocated to each claimant, defendant, third-party defendant, person who has been released from liability under section 668.7, and injured or deceased person whose injury or death provides a basis for a claim to recover damages for loss of consortium, services, companionship, or society. For this purpose the court may determine that two or more persons are to be treated as a single party.

> \* \* \* \* \* \*

IOWA CODE § 668.3.

> 1. A right of contribution exists between or among two or more persons who are liable upon the same indivisible claim for the same injury, death, or harm, whether or not judgment has been recovered against all or any of them. It may be enforced either in the original action or by a separate action brought for that purpose. The basis for contribution is each person's equitable share of the obligations, including the share of fault of a claimant, as determined in accordance with section 668.3.

> 2. Contribution is available to a person who enters into a settlement with the claimant only if the liability of the person against whom contribution is sought has been extinguished and only to the extent that the amount paid in settlement was reasonable.

> \* \* \* \* \* \*

IOWA CODE § 668.5

> A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the amount of the released person's equitable share of the obligation, as determined in section 668.3, subsection 4.

IOWA CODE § 668.78. Iowa Code section 668.3, subsection 4, states, "The court shall determine the amount of damages payable to each claimant by each other party, if any, in accordance with the findings of the court or jury."

The Clinic defendants argue that because IBP cannot pursue contribution as an intentional tortfeasor, it could only pursue its contribution claim if it were "determined to have a lesser degree of intent." In that event, the Clinic defendants argue,

IBP's claim would be governed by chapter 668. (Doc. No. 106, p. 4) They argue further that because they have settled the claims asserted by Catipovic against them, they are "discharged" parties under section 668.7, and therefore a contribution claim cannot be asserted against them.

The County defendants argue that in light of the scheme set up in chapter 668, the Iowa Supreme Court "would probably adopt a pro rata common-law doctrine in which a party could discharge the party's common liability to the plaintiff by settlement. Thereafter, the settling party's percentage of fault (already discharged by settlement) would be determined at the trial between or among any non-settling parties." (Doc. No. 103, p. 4)

■ IBP is correct that chapter 668 does not apply to intentional torts. *See Carson v. Webb,* 486 N.W.2d 278, 280 (1992) (The collateral source rule in section 668.14 "has no applicability to intentional torts," *citing Nieman v. Heil Co.,* 471 N.W.2d 790, 791 (Iowa 1991) (collateral source rule viable where chapter 668 does not apply)); *Tratchel v. Essex Group. Inc.,* 452 N.W.2d 171, 180–81 (Iowa 1990) (chapter 668 not applicable to fraud or intentional torts); *see also, Godbersen v. Miller, supra,* 439 N.W.2d at 209 (comparative fault principles have no application to a claim for punitive damages). If IBP, as an alleged intentional tortfeasor, is entitled to pursue a claim for contribution under Iowa law, then it is not prohibited from pursuing such a claim by anything in chapter 668. However, although it appears the Iowa Supreme Court might allow contribution by an intentional tortfeasor, the court cannot predict whether the Iowa court would, at the same time, impose restrictions on a claim for contribution against a party who has discharged any liability to the plaintiff by settlement.

## C. Certification of Question to Iowa Supreme Court

■ Because of the uncertainty as to whether the Iowa Supreme Court would permit IBP to pursue a claim for contribution against its codefendants under the facts of this case, the court has carefully considered whether to certify the issues raised by these facts to the Iowa Supreme Court. "Whether a federal district court should certify a question of state law to the state's highest court is a matter 'committed to the discretion of the district court.'" *Leiberkneckt v. Bridgestone/Firestone, Inc.,* 980 F.Supp. 300, 309 (N.D.Iowa 1997) (quoting *Allstate Ins. Co. v. Steele,* 74 F.3d 878, 881–82 (8th Cir.1996) (citing *Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974)); citing *Packett v. Stenberg,* 969 F.2d 721, 726 (8th Cir.1992) (also citing *Lehman Bros.*)).

This court's Local Rules provide:

When a question of state law may be determinative of a cause pending in this court and it appears there may be no controlling precedent in the decisions of the appellate courts of the state, any party may file a motion to certify the question to the highest appellate court of the state. The court may, on such motion or on its own motion, certify the question to the appropriate state court.

LR 83.1 (as amended Jan. 1, 2003). The Iowa Supreme Court is authorized by statute to answer questions certified by this court where the questions "may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the appellate courts of [Iowa]." IOWA CODE § 684A.1 (1996).

In *Leiberkneckt,* the Honorable Mark W. Bennett discussed in some detail the following factors to be considered in deter-

mining whether to certify a question to a state's highest court:

(1) the extent to which the legal issue under consideration has been left unsettled by the state courts; (2) the availability of legal resources which would aid the court in coming to a conclusion on the legal issue; (3) the court's familiarity with the pertinent state law; (4) the time demands on the court's docket and the docket of the state supreme court; (5) the frequency that the legal issue in question is likely to recur; and (6) the age of the current litigation and the possible prejudice to the litigants which may result from certification. *Olympus Alum. Prod. v. Kehm Enters., Ltd.,* 930 F.Supp. 1295, 1309 n. 10 (N.D.Iowa 1996) (citing *Rowson v. Kawasaki Heavy Indus., Ltd.,* 866 F.Supp. 1221, 1225 & n. 5 (N.D.Iowa 1994))

*Id.,* 980 F.Supp. at 310. The court added a seventh factor, to-wit: "whether there is any split of authority among those jurisdictions that have considered the issues presented in similar or analogous circumstances." *Id.,* 980 F.Supp. at 311.

In the present case, the first, second and fifth factors favor certification of the issues in the present case to the Iowa Supreme Court. The legal principles involved here have been called into question by recent decisions of the Iowa Supreme Court, and therefore they are potentially unsettled under Iowa law. Other than the cited cases, this court has been unable to locate legal resources that are useful in predicting how the Iowa Supreme Court would, at the current time, rule on the issues. Finally, these issues are likely to arise again in future cases.

The fourth factor weighs against certification. Certainly, the Iowa Supreme Court has no lesser demands on its docket than does this court. The third factor is neutral. Although this court is familiar with the applicable state law, that law provides little assistance in resolving the issues at hand. The sixth factor also is neutral, in that the parties would not, under the resolution of the questions posed below, be forced to suffer any significant delay or inconvenience while awaiting a response from the Iowa court. The seventh factor is not applicable under the present circumstances.

Considering all these factors in the context of this case, the court finds certification is appropriate. The answers to the issues raised here all revolve around questions of state law. Based on the uncertainty as to the current position of the Iowa Supreme Court on these questions, the court is reluctant to render a decision based upon historical precedents whose continued viability is uncertain. *Cf. Keener v. Convergys Corp.,* 312 F.3d 1236, 1241 (11th Cir.2002) (" 'Where there is any doubt as to the application of state law, a federal court should certify the question to the state supreme court to avoid making unnecessary *Erie* "guesses" and to offer the state court the opportunity to interpret or change existing law.' *Mosher v. Speedstar Div. of AMCA Intern., Inc.,* 52 F.3d 913, 916–17 (11th Cir.1995) (citation omitted)."); *Trans Coastal Roofing Co. v. David Boland, Inc.,* 309 F.3d 758, 761 (11th Cir.2002) (same).

Accordingly, the court hereby certifies to the Iowa Supreme Court the following three questions, to-wit:

1. Is a party who intentionally interferes with the performance of a contract entitled to seek contribution from other parties who allegedly participated in the intentional interference with the performance of the contract?

2. Is a party who intentionally interferes with the performance of a contract entitled to seek contribution from other parties who allegedly are liable to the

injured party for the same damages caused by the first party's intentional interference with the performance of the contract, but who did not act intentionally?

3. If a party who intentionally interferes with the performance of a contract is entitled to seek contribution from other parties who allegedly are liable to the injured party for the same damages caused by the first party's intentional interference with the performance of the contract, is the party seeking contribution prohibited from seeking contribution against a party who has been discharged from liability to the plaintiff by settlement?

### III. CONCLUSION

For the reasons stated above, the court grants IBP's motion for leave to file a second amended answer and cross claim (Doc. No. 109). The Clerk of Court is directed to detach the proposed second amended answer and cross claim from the motion and file it. However, all proceedings on the cross claim are **stayed**, pending an answer from the Iowa Supreme Court on the certified questions set out above.

By January 17, 2003, Catipovic, the County defendants, and the Clinic defendants shall file the appropriate motions, dismissals, or other papers necessary to effectuate the settlement of the claims asserted between and among those parties in this case.

Catipovic's claim against IBP in Count VI shall come on for trial on June 23, 2003, at 9:00 a.m., before the Honorable Linda R. Reade in Cedar Rapids, Iowa. A separate trial scheduling order will be entered. Judge Reade will hold a Final Pretrial

Conference in this case on Friday, June 20, 2003, at 3:00 p.m.

**IT IS SO ORDERED.**