# IN THE COURT OF APPEALS OF IOWA

No. 24-1315
Filed October 1, 2025

**SHELBY NICOLE BOOK and DYLAN JAMES BOOK,**
    Plaintiffs-Appellants,

**vs.**

**JOHN BURGER, FAITH LUTHERAN CHURCH OF ADEL, IOWA, and IOWA DISTRICT WEST OF THE LUTHERAN CHURCH-MISSOURI SYNOD,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Dallas County, Michael Jacobsen (judgment and directed verdict motion) and Brad McCall (summary judgment ruling), Judges.

A husband and wife appeal summary judgment rulings, raise claims concerning several of the district court's evidentiary rulings, and allege the district court erred in granting a directed verdict on the issue of punitive damages. **AFFIRMED.**

Billy J. Mallory (argued) and Trevor A. Jordison of Mallory Law, Urbandale, for appellants.

Stephen E. Doohen (argued) of Whitfield & Eddy, PLC, Des Moines, for appellee John Burger.

Patrick L. Sealey (argued) and Zack A. Martin, Heidman Law Firm, PLLC, Sioux City, for appellee Faith Lutheran Church of Adel, Iowa.

Deborah M. Tharnish and Katie E. Gral (argued) of Dentons Davis Brown PC, Des Moines, for appellee Iowa District West of The Lutheran Church-Missouri Synod.


Heard at oral argument by Schumacher, P.J., and Badding and Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

Shelby and Dylan Book appeal the following district court rulings: (1) a grant of partial summary judgment for defendant Faith Lutheran Church (Faith Lutheran), dismissing the Books' negligent-hiring claim; (2) a grant of summary judgment dismissing the Books' negligent-hiring and negligent-infliction-of-emotional-distress claims based on respondeat superior against defendant Iowa District West of the Lutheran Church-Missouri Synod (District West); (3) an evidentiary ruling excluding causation testimony of an expert witness; (4) an evidentiary ruling excluding the testimony of two witnesses, one due to lack of relevance and the other because of prejudice; (5) the denial of the Books' claim for punitive damages.

We affirm the grant of partial summary judgment to Faith Lutheran and the grant of summary judgment to District West. We determine no abuse of discretion in the district court's evidentiary rulings. And we find no error in the district court's directed verdict on the issue of punitive damages. Accordingly, we affirm.

I.      **Background Facts & Proceedings**

Shelby and Dylan Book began dating in 2014 and attended Faith Lutheran Church of Adel, Iowa. Before they married, Dylan and Shelby agreed to an "open marriage." The Books participated in premarital counseling at Faith Lutheran and married in 2017, with then-pastor John Burger (Burger) performing the ceremony.

By 2019, the couple began experiencing difficulties in their marriage. Shelby testified that she and Dylan were not communicating often, and when they did, it did not go well. On one occasion, Dylan came home to discover Shelby having sexual relations with another man. Shelby and Dylan argued, and the next day Shelby contacted Faith Lutheran for assistance with her marriage.

Shelby met with Burger at Faith Lutheran where they discussed the Books' marriage difficulties. They traveled to Dylan's workplace to bring him into the conversation. It was during this conversation that Burger first learned of the Books' open marriage.

While Dylan was on vacation, Shelby stayed behind in Iowa with the couple's child due to the previous argument. Before Dylan left, Burger asked Dylan if he could continue to counsel Shelby without Dylan present. Dylan agreed. Shelby and Burger agreed to meet at Burger's home.

Conflicting testimony was given as to what occurred during the initial session. Shelby testified that Burger requested Shelby be his "accountability partner" where she would allow herself to be contacted by him so she could prevent Burger from masturbating. Burger stated he merely referenced a previous accountability partner and masturbation. Shelby testified that she became fearful of Burger after this conversation.

Shelby called Dylan several hours later to tell him what happened. Dylan, after conferring with others, suggested that Shelby call the Dallas County Sheriff's Office. The officers recommended that Shelby set up another meeting with Burger at her home while deputies were present but hidden, and she would wear a recording device. Shelby agreed.

Burger arrived at the Books' residence and had another conversation with Shelby. Burger was not aware the conversation was being recorded, nor was he aware of the presence of deputies within the house. During the conversation, Burger and Shelby discussed her marriage issues, the potential uses of hypnosis therapy on Dylan, Burger's previous experiences with an accountability or

"chastity" partner, and sexual "fasting." Burger talked about his own marriage issues. Then Burger indirectly requested Shelby be his accountability coach, and when Shelby asked if this "coaching" just involved words, Burger replied, "It will be whatever is right for our trust within the bounds of my marriage." Burger also stated, if Shelby became his accountability coach, "if you're doing this with me, I don't want you around off with other guys, I don't." After Burger left the home, with the recording still running, Shelby stated, "Holy shit. That worked. I first thought, like, '[g]reat, this isn't going anywhere, the way I wanted it to,' and then it did . . . ." The Dallas County Sheriff later determined Burger's conduct, although "different or weird," was not criminal in nature.

Burger self-reported this incident to Dr. Turner (Turner), District West's president, and provided him with an apology letter that Burger wrote to the Books, which Turner found confusing. Pastor Gerkin, a former pastor at Faith Lutheran and former staff member at District West, made an accusation that the one-on-one meetings between Burger and Shelby amounted to sexual misconduct. At this point, Turner began investigating the claims.

A group from District West, which included Turner and Gerkin, met with the Books and then met with Burger to obtain more information. Thereafter, Turner placed Burger on "restricted status." Turner later emailed Burger suggesting he resign as pastor at Faith Lutheran. On the same date, Turner sent a letter to Burger stating District West would begin a formal investigation. The newly formed investigative committee interviewed Burger and again requested that he resign. District West terminated Burger's membership in the Missouri Synod but had no power to remove him as pastor from Faith Lutheran. Afterward, District West

presented recommendations to Faith Lutheran, which Faith Lutheran could choose to adopt or not adopt.  Two weeks later, Burger resigned from Faith Lutheran.

The Books filed a petition and jury demand in Dallas County alleging the following: (1) intentional infliction of emotional distress, breach of fiduciary duty, professional negligence, and negligence against Burger; (2) negligence, respondeat superior, negligent hiring, and negligent infliction of emotional distress against Faith Lutheran; and (3) respondeat superior, negligent hiring, and negligent infliction of emotional distress against District West.  The Books sought compensatory and punitive damages.

Before the case proceeded to jury trial, the district court held a hearing on District West's and Faith Lutheran's motions for summary judgment.  District West was "seek[ing] summary dismissal of all the claims asserted against it."  Faith Lutheran was "seek[ing] dismissal of the claims based on negligent hiring, supervision and retention and negligent infliction of emotional distress."  The district court dismissed all claims against District West based on a lack of an employer-employee relationship with Burger.  As to Faith Lutheran, the district court dismissed the negligent-hiring claim because of lack of foreseeable harm arising from hiring, supervising, and retaining Burger as an employee.

During trial, the court did not allow an expert treating witness, Kiel, to testify on behalf of the Books as to the cause of Shelby's alleged injuries, as the court found there was no notice of causation testimony within the expert disclosure.  The court also found testimony from another of Books' witnesses, Iowa Lutheran Services counselor Pritzel, was not relevant, and she lacked personal knowledge of conversations between Shelby and Burger.  On the same day of trial, an offer

of proof regarding the testimony of a witness, M.D., took place to determine the probative value of the anticipated testimony for the Books. M.D. was involved in counseling sessions with Burger seven years prior and testified she was touched inappropriately by Burger. The court found the offer of proof testimony to be too remote, not probative, and "highly prejudicial."

After the close of the Books' evidence and again at the close of the defendants' evidence, but before the case was submitted to the jury, the defendants moved for a directed verdict regarding the claim for punitive damages. The claim for punitive damages related only to the claims of intentional infliction of emotional distress and breach of fiduciary duty. The court granted the motion, finding under Iowa Code section 688A.1 (2023) that Burger's actions "were [not] done with willful and wanton disregard of Shelby Book's rights." Nor did the court find Burger acted with "malice or legal malice."

The case was submitted to the jury, who returned a verdict finding only against Burger and awarded damages of $5000 to the Books. The Books appeal.

## II. Discussion

### (A) Summary Judgment for Negligent Hiring against Faith Lutheran

The Books allege, in viewing the evidence in a light most favorable to them, that sufficient facts existed to defeat summary judgment on the negligent-hiring claim against Faith Lutheran. The Books argue Faith Lutheran failed to properly supervise Burger's improper employee actions.

We review grants "of summary judgment for correction of errors at law." *Rieder v. Segal*, 959 N.W.2d 423, 425 (Iowa 2021). "Summary judgment is appropriate when 'there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law.'" *Dumont v. Quincy Place Holdings*, No. 20-1054, 2021 WL 4593184, at *1 (Iowa Ct. App. Oct. 6, 2021) (quoting Iowa R. Civ. P. 1.981(3)). A material fact is one which "might affect the outcome of the claim." *Id.*

The burden of demonstrating "the nonexistence of a material fact question" falls on the moving party. *Susie v. Fam. Health Care of Siouxland, P.L.C.*, 942 N.W.2d 333, 336 (Iowa 2020). But, if "the nonmoving party cannot generate a prima facie case in the summary judgment record, the moving party is entitled to judgment as a matter of law." *Id.* at 336–37. We review "the summary judgment record in the 'light most favorable to the nonmoving party.'" *Rieder*, 959 N.W.2d at 426 (quoting *Hedlund v. State*, 930 N.W.2d 707, 715 (Iowa 2019)).

A negligent hiring claim also includes negligent supervision and retention claims. *Godar v. Edwards*, 588 N.W.2d 701, 709 (Iowa 1999). To succeed on a negligent hiring claim, a plaintiff must prove:

> (1) That the employer knew, or in the exercise of ordinary care should have known, of its employee's unfitness at the time of hiring; (2) that through the negligent hiring of the employee, the employee's incompetence, unfitness, or dangerous characteristics proximately caused the resulting injuries; and (3) that there is some employment or agency relationship between the tortfeasor and the defendant employer.

*Id.* The major consideration in a negligent hiring claim is the foreseeability of negligent or reckless behavior by the employee. *Bandstra v. Covenant Reformed Church*, 913 N.W.2d 19, 42 (Iowa 2018). In the context of an agency relationship between an employee and employer, "[c]onduct that results in harm to a third person is not negligent or reckless unless there is a foreseeable likelihood that harm will result from the conduct." *Id.* (citation omitted).

We agree with the district court's determination that there existed no genuine issue of material fact concerning the negligent hiring claim against Faith Lutheran. The Books presented no evidence demonstrating a foreseeable possibility that harm could result from Burger interacting with Faith Lutheran members. *See id.*; *see also Humphries v. Trs. of the Methodist Episcopal Church of Cresco, Iowa*, 566 N.W.2d 869, 872–73 (Iowa 1997) (to properly resist a motion for summary judgment "[the party] must set forth specific facts constituting competent evidence to support a prima facie claim." (citation omitted)). As the district court pointed out, Burger has no criminal record and had never been terminated from another church because of similar behavior. Also, none of the witnesses who testified were aware of any previous improper behavior by Burger.

The Books argue that because Burger engaged in hypnosis in counseling sessions and counseled with Shelby alone, Faith Lutheran failed to properly supervise him. But, as stated above, there is no evidence that Faith Lutheran was aware of Burger's usage of hypnosis techniques or that he counseled Shelby, or anyone alone, before the incident with Shelby. *See Humphries*, 566 N.W.2d at 872. The Books have failed to provide evidence indicating any foreseeable misconduct by Burger either at the time of his hiring or after, so there is no genuine issue of material fact relating to the negligent hiring claim. *See id.*; *see also Dumont*, 2021 WL 4593184, at *1. We affirm the district court's entry of summary judgment on this issue.

**(B) Summary Judgment Regarding Vicarious Liability for District West**

The Books claim the district court erred in granting summary judgment for District West on the issue of vicarious liability, with the court finding that there was

not an employer-employee relationship between District West and Burger. The Books assert that because District West investigated the allegations, placed Burger on "restricted status," suspended him from the Synod, and requested he resign, they practiced a level of control indicating an employer-employee relationship.

Claims of vicarious liability based on respondeat superior require "two elements: proof of an employer/employee relationship . . . and proof that the injury occurred within the scope of that relationship." *Walderbach v. Archdiocese of Dubuque, Inc.*, 730 N.W.2d 198, 201 (Iowa 2007). Normally, "the question of whether an employment relationship exists is one of fact that should be decided by the trier of fact." *Heinz v. Heinz*, 653 N.W.2d 334, 344 (Iowa 2002). But when there is insufficient evidence to show an employer-employee relationship, a court may issue summary judgment. *See id.*

When determining whether an employee-employer relationship exists, a court weighs several factors, and the analysis is "not determined by one particular fact or circumstance." *Id.* at 343. "In making this determination, we look foremost to the intention of the parties." *Id.*; *Teen Challenge Intern. USA v. Pauler*, No. 08-1801, 2009 WL 2424656, at *5 (Iowa Ct. App. Aug. 6, 2009). We may also look at several other factors, with no single factor being necessarily conclusive:

> (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation-supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer"; (10) whether the worker accrues retirement benefits;

(11) whether the "employer" pays social security taxes; and
(12) the intention of the parties.

30 C.J.S. *Employer—Employee* § 6 (2025); *Heinz*, 653 N.W.2d at 343.

Within the context of District West's relationship with Burger, the above factors weigh against the existence of an employee-employer relationship. District West did not control the manner of Burger's work performance, did not pay his salary, had no ability to terminate employment, and had no control over the way Burger performed his employment duties.

According to testimony from the regional ecclesiastical supervisor and district president, Turner, the only involvement in Burger's hiring was District West providing a list of candidates to Faith Lutheran. While District West had the right to suspend Burger from the "Synod roster," Faith Lutheran had the definitive authority to terminate his employment or keep him as an employee. The extent of District West's involvement in Burger's employment with Faith Lutheran was simply to make recommendations, not ultimate decision-making. The relationship between Burger and District West was not that of an employer-employee. *See Heinz*, 653 N.W.2d at 343.

The district court appropriately determined that no reasonable factfinder could conclude that Burger was employed by District West, and we conclude the grant of summary judgment regarding respondeat superior and vicarious liability was not in error. *See Susie*, 942 N.W.2d at 336.

**(C) Exclusion of Causation Testimony**

The Books argue that their treating expert witness, Kiel, was improperly limited in his testimony. The district court found that there was no notice filed

showing he would testify to causation within the expert disclosure. The Books assert that "Iowa law does not require that a party serve a document captioned 'Expert Disclosure,'" but the requirements are "satisfied when the expert was identified in the designation and their facts and opinions disclosed elsewhere."

We review the district court's decision on the admission of expert testimony for abuse of discretion. *Mengwasser v. Comito*, 970 N.W.2d 875, 881 (Iowa 2022). "But when the question is one of interpretation of a rule of civil procedure, such as rule 1.500(2), we review for errors at law." *Id.*

The Iowa Rules of Civil Procedure 1.500(2)(b) and (c) lay out expert disclosure requirements, delineating which experts must provide a written report and those who do not. Treating physicians[1] who are designated as experts fall under rule 1.500(2)(c), which states witnesses do not need to provide a written report but must still provide a disclosure describing "(1) The subject matter on which the witness is expected to present evidence . . . [and] (2) [a] summary of the facts and opinions to which the witness is expected to testify." *Mengwasser*, 970 N.W.2d at 881–82. The "disclosure" need not be a document labeled as such; it merely needs to conform to rule 1.500(2)(c). *See id.* at 882. Concerning the rule 1.500(2)(c)(2) summary requirement:

> [T]he summary of facts and opinions under rule 1.500(2)(c)(2) does not require a high level of specificity, [but] there must be some summary of the actual facts and opinions to which the witness is

---

[1] Under Iowa Rule of Civil Procedure 1.500(2)(b), a physician is not considered to be "retained for litigation purposes" purely by virtue of their status as the plaintiff's treating physician. *Mengwasser*, 970 N.W.2d at 882.

expected to testify. A mere list of topics or subject areas does not meet the requirements of the rule.

*McGrew v. Otoadese*, 969 N.W.2d 311, 324 (Iowa 2022).

Also, incorporation by reference within a disclosure to other evidence, such as medical records or deposition testimony satisfies the summary requirement of rule 1.500(2)(c)(2). *Id.* If the disclosure or incorporated evidence lacks certain expert opinions, such as causation opinions, then a court may, in its discretion, refuse to allow testimony on that subject. *Id.* at 325.

Here, the Books' supplemental initial disclosures which designated Kiel as a testifying expert stated his testimony would include "information regarding injuries suffered as a result of the incident, and damages." This disclosure satisfied the first part of rule 1.500(2)(c), as it identified "the subject matter on which the witness is expected to present evidence." *See id.* at 324 (cleaned up).

As for the rule 1.500(2)(c)(2) requirement, contrary to the Books' assertion, the disclosure failed to provide a summary of opinions or facts to which Kiel would testify. *See Mengwasser*, 970 N.W.2d at 882. The disclosure also failed to incorporate by reference either deposition testimony, medical records, or any other evidence as a basis for the causation opinion. *See McGrew*, 969 N.W.2d at 324. More significantly, even if Kiel's medical records had been referenced on the issue of causation, the admitted record contains no opinions as to Burger causing Shelby's depression. *See id.* at 325.

The Books' brief references a single page of Kiel's records in which Shelby allegedly discusses that her depression resulted from Burger's actions. This page was not admitted into evidence, and the Books do not argue it should have been

admitted. Further, the admitted medical records of Kiel discuss several other potential causes of Shelby's depression that do not reference Burger.

Because the Books failed to include any summary or reference to Kiel's causation opinion as required by rule 1.500(2)(c)(2), and since there is no causation opinion within Kiel's admitted records, we affirm the district court's denial of Kiel's causation testimony. *See id.*; *see also Bailey v. Grimes*, No. 24-0740, 2025 WL 2057938, at *2 (Iowa Ct. App. July 23, 2025).

**(D) Exclusion of Testimony of Pritzel & M.D.**

The Books claim the district court erred in excluding the testimony of two witnesses, Pritzel and M.D. Pritzel's testimony was excluded because the court deemed it not relevant, and the Books argue it was relevant to show breach of fiduciary duty "to establish the duty owed by a counselor to a client." M.D's testimony was excluded because it was found to be more prejudicial than probative and remote. The Books argue M.D.'s testimony was probative to demonstrate "that Burger intended to use the counseling sessions with [Shelby] Book to satisfy his own sexual proclivities" and to show lack of mistake on the part of the Books.

We review the district court's determination on whether to exclude or admit evidence for abuse of discretion. *State v. Paredes*, 775 N.W.2d 554, 560 (Iowa 2009). "Rulings on the relevance of evidence are entrusted to the discretion of the trial court and warrant reversal only when the court has abused its discretion." *State v. Munn*, No. 13-1216, 2014 WL 3747729, at *6 (Iowa Ct. App. July 30, 2014).

To determine whether evidence is relevant, the court analyzes whether it has any tendency to make the existence of any fact that is of consequence to the

determination of the action "more probable or less probable than it would be without the evidence." Iowa. R. Evid. 5.401. "The test is whether a reasonable person might believe the probability of the truth of the consequential fact to be different if the person knew of the proffered evidence." *McClure v. Walgreen Co.*, 613 N.W.2d 225, 235 (Iowa 2000) (cleaned up). If an evidentiary ruling is erroneous, "[w]e reverse only if the . . . ruling affects the substantial rights of the complaining party." *Id.* Even if evidence is relevant, a trial court has discretion to exclude evidence when its "probative value [is] substantially outweighed by the danger of unfair prejudice and confusion of issues." *Id.*

### i. Pritzel's Testimony

Pritzel, a licensed counselor with Lutheran Family Service[2] was a member of the investigative committee which was tasked with reviewing the incidents involving Burger and Shelby. The district court found, after reviewing deposition testimony, that Pritzel's testimony was not relevant because she lacked knowledge of what Burger stated in his meetings with Shelby and the rest of the testimony was not relevant. The Books assert Pritzel's testimony would have "establish[ed] the duty for negligence, that Burger had a duty to conduct himself in a professional manner," fiduciary duties, and that "her investigation revealed a breach of those duties."

Pritzel's deposition shows that neither she nor anyone else in the investigative committee had actual personal knowledge of what Burger said to Shelby. The only evidence relied on by the committee was a letter of apology from

---

[2] Lutheran Family Service is an independent organization separate from Faith Lutheran and District West.

Burger to the Books, and one meeting with Burger where Pritzel thought he was "evasive." Pritzel did not obtain any notes from other investigators. None of the investigators obtained or listened to the recorded conversation between Burger and Shelby. Pritzel was not present when other investigators met with the Books. It appears the only possible relevant information from the deposition were Pritzel's opinions as a licensed counselor, in which she stated Burger's actions were "not appropriate" as a religious counselor.

Pritzel's testimony, based on the deposition, would not have convinced a reasonable person to "believe the probability of the truth of the consequential fact to be different if the person knew of the proffered evidence." *See id.* Pritzel's knowledge of the incident was second-hand. And there was already opinion testimony from other witnesses, including Pastor Turner, that Burger's actions were not appropriate.

The only testimony of Pritzel, which may have established the breach of duties outlined by the Books, was opinion testimony based on her specialized knowledge as a licensed counselor. But Pritzel was not designated as an expert witness. *See* Iowa R. Evid. 5.701.[3] As we afford deference to decisions of the district court concerning relevancy of evidence, we find the district court did not abuse its discretion in denying testimony from Pritzel due to lack of personal

---

[3] That rule states:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> a. Rationally based on the witness's perception;
> b. Helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> c. Not based on scientific, technical, or other specialized knowledge within the scope of rule 5.702.

knowledge.  *See* Iowa R. Evid. 5.602; *see also Graen's Mens Wear, Inc. v. Stille-Pierce Agency*, 329 N.W.2d 295, 297 (Iowa 1983).

### ii.  M.D.'s Testimony

M.D. was a former member of Faith Lutheran who had allegedly experienced sexual abuse by Burger during a counseling session when she was a minor.  The Books offered M.D.'s testimony "to show that lack of mistake or understanding on the part of the Books, . . . to show motivation, and . . . to show opportunity."  The district court disallowed M.D.'s testimony after an offer of proof because of lack of similarity, remoteness, absence of proof of motive and opportunity, and that it was "more prejudicial than probative to any issue in this case."

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Iowa R. Evid. 5.403.  Concerning relevant prior bad acts evidence, trial courts "must decide if the evidence's probative value is substantially outweighed by the danger of unfair prejudice."  *In re Det. of Williams*, 628 N.W.2d 447, 456 (Iowa 2001).  When evidence "has a minimum of probative quality but is highly prejudicial [it] generally must be excluded."  *State v. Brown*, 341 N.W.2d 10, 16 (Iowa 1983).  Trial courts also have discretion to exclude relevant evidence because of remoteness if "the elapsed time is great enough to negative any logical connection between the evidence and the fact sought to be established by it."  *Freeman v. Hy-Vee Inc.*, No. 99-1297, 2000

WL 1587764, at *4 (Iowa Ct. App. Oct. 25, 2000) (quoting *Godbersen v. Miller*, 439 N.W.2d 206, 210 (Iowa 1989)).

During the offer of proof, M.D. testified that seven years earlier, when she was fourteen years old, she participated in several grief counseling sessions with Burger outside of Faith Lutheran. She alleged that during one session, Burger asked her and her mother to lay down on their backs with their eyes closed. Burger allegedly "graze[d]" M.D.'s chest and crotch areas over her clothing with his hands.

Although the trial court made no determination relating to relevancy, assuming the testimony was probative, the court properly exercised its discretion in excluding the testimony. *See Williams*, 628 N.W.2d at 456.

First, the court stated the events were "very dissimilar," as Shelby never accused Burger of inappropriately touching her. *See State v. Thoren*, 970 N.W.2d 611, 631 (Iowa 2022) ("To permit the inference that similar acts establish the same person committed both acts, we have required that the other acts must be 'strikingly similar' or of a 'unique nature.'" (quoting *In re J.A.L.*, 694 N.W.2d 748, 753 (Iowa 2005))).

Second, the court found the events in the testimony were too remote in relation to Shelby's accusations against Burger, a decision within the courts "sound discretion." *Freeman*, 2000 WL 1587764, at *4. Lastly, the district court determined within its discretion that the testimony was "more prejudicial than

probative to any issue in this case," and so the court was required to exclude the testimony. *Brown*, 341 N.W.2d at 16.

We determine the district court did not abuse its discretion in excluding this testimony.

**(E) Denial of Punitive Damages**

The Books assert the district court erred in declining to submit to the jury the punitive damages issue. They argue that there was substantial evidence of Burger's conduct being willful and wanton and committed with legal malice. The district court ruled on a motion for a directed verdict after the close of evidence. The district court found the actions of Burger did not rise to willful and wanton conduct, nor did he act with actual malice or legal malice, precluding a claim for punitive damages.[4]

We review rulings by the district court on motions for directed verdict for "the correction of errors at law." *Godfrey v. State*, 962 N.W.2d 84, 99 (Iowa 2021). The party against whom a motion for directed verdict is filed must show there is substantial evidence supporting the claim to defeat the motion. *Godar*, 588 N.W.2d at 705. "Evidence is substantial when a reasonable mind would accept it as adequate to reach a conclusion." *Id.* When reviewing a district court's ruling,

---

[4] The Books' argument on appeal concerning punitive damages are directed at Burger and not at Faith Lutheran. But even if their argument encompasses Faith Lutheran, we find punitive damages were not supported against Faith Lutheran.

we view the evidence "in the light most favorable to the party against whom the motion was directed." *Id.*

The standard for awarding punitive damages is defined in Iowa Code section 668A.1(a): "[w]hether, by a preponderance of clear, convincing, and satisfactory evidence, the conduct of the defendant from which the claim arose constituted willful and wanton disregard for the rights or safety of another." Willful and wanton conduct has been defined as "when the actor has intentionally done an act of unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences." *Miranda v. Said*, 836 N.W.2d 8, 34 (Iowa 2013) (cleaned up).

The purpose of punitive damages is to serve as deterrence and punishment for egregious conduct. *McClure*, 613 N.W.2d at 230. Punitive damages are appropriate "only when actual or legal malice is shown." *Id.* at 231. "Actual malice is characterized by such factors as personal spite, hatred, or ill will." *Id.* "Legal malice is shown by wrongful conduct committed or continued with a willful or reckless disregard for another's rights." *Id.* Merely objectionable or negligent conduct is not sufficient to support a claim for punitive damages. *Cawthorn v. Catholic Health Initiatives Iowa Corp.*, 743 N.W.2d 525, 530 (Iowa 2007).

There is not substantial evidence to show Burger, in any of the meetings with Shelby or the one including Dylan, acted "in disregard of a known or obvious risk" in which it was "highly probable that harm would follow," accompanied by conscious indifference. *See Miranda*, 836 N.W.2d at 34 (citation omitted). Neither was it shown that Burger acted with actual malice, as there is no evidence

demonstrating "spite, hatred, or ill will." *McClure*, 613 N.W.2d at 230. The evidence also does not substantially support Burger committing legal malice, as it does not appear Burger acted "with a willful or reckless disregard for another's rights." *Id.* at 231.

At the meetings between Burger and Shelby at Burger's home and subsequently at Shelby's home, the evidence shows that Burger discussed his own experiences with marriage counseling. The conversations included topics such as faith, accountability coaches, masturbation, chastity, "and methods to direct his sexual energy to his wife." At the meeting at the Books' residence, Burger also implied that Shelby could be his accountability coach, and requested that if she agreed, he would not want her to pursue sexual relations with another person. The evidence does not show that Burger ever requested sex from Shelby. The only physical contact between the two in the record was a consensual hug after the meeting at Shelby's house. As stated above, objectionable conduct does not support a claim for punitive damages. *See Cawthorn*, 743 N.W.2d at 529–30. We conclude the district court did not err in granting the motion for directed verdict as to the punitive damages claim.

## III.    Conclusion

We conclude that summary judgment rulings were appropriate and determine the district court committed no abuse of discretion in its evidentiary rulings. And the district court committed no legal error in its directed verdict on punitive damages. Accordingly, we affirm.

**AFFIRMED.**